## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

GEORGE PARKER, #140922,    )
    )
    Plaintiff,    )
    )
vs.    )    CIVIL ACTION NO. 2:06-CV-649-WHA
    )
GWENDOLYN GIVENS, et al.,    )
    )
    Defendants.    )

### SPECIAL REPORT AND ANSWER

COME NOW the Defendants, Gwendolyn Givens, Sharon Rogers, Roosevelt Lewis, Relford Kendrick, Grayling Davis and Levan Thomas, by and through undersigned counsel in the above-styled action, and file their Special Report and Answer pursuant to the July 26, 2006 Order of this Honorable Court. The Defendants state as follows:

### PLAINTIFF'S ALLEGATIONS

The Plaintiff alleges that the Defendants violated his constitutional rights by using excessive force and wrongful punishment.

### DEFENDANTS

1.    Gwendolyn Givens, COII
    Staton Correctional Facility
    P.O. Box 56
    Elmore, AL 36025

2.    Sharon Rogers, COII
    Staton Correctional Facility
    P.O. Box 56
    Elmore, AL 36025

3.    Roosevelt Lewis, COI
      Staton Correctional Facility
      P.O. Box 56
      Elmore, AL 36025

4.    Relford Kendrick, COI
      Staton Correctional Facility
      P.O. Box 56
      Elmore, AL 36025

5.    Grayling Davis, COI
      Staton Correctional Facility
      P.O. Box 56
      Elmore, AL 36025

6.    Levan Thomas, Warden II
      Staton Correctional Facility
      P.O. Box 56
      Elmore, AL 36025

## DEFENSES

The Defendants assert the following defenses to the Plaintiff's claims:

1.  The Defendants deny each and every material allegation contained in the Plaintiff's Complaint and demand strict proof thereof.

2.  The Defendants plead not guilty to the charges in the Plaintiff's Complaint and demand strict proof thereof.

3.  The Plaintiff's Complaint fails to state a claim upon which relief can be granted.

4.  The Plaintiff is not entitled to any of the relief requested.

5.  The Defendants plead the defense of qualified immunity and aver that any purported action taken by any of them was reasonable and in good faith with reference to clearly established law at the time of the incidents complained of by the Plaintiff.

6.  The Defendants are entitled to qualified immunity and aver it is clear from the face of the complaint that the Plaintiff has not alleged specific facts indicating that any Defendant violated any clearly established constitutional right.

7.  The Defendants cannot be held liable on the basis of *respondeat superior,* agency, or vicarious liability theories.

8.  The Plaintiff is not entitled to any relief under 42 U.S.C. § 1983.

9.  The allegations contained in the Plaintiff's Complaint against the Defendants, fails to comply with the heightened specificity requirement of Rule 8 in § 1983 cases against persons sued in their individual capacities. *See Oladeinde v. City of Birmingham,* 963 F. 2d 1481, 1485 (11th Cir. 1992); *Arnold v. Board of Educ. of Escambia County, Ala.,* 880 F. 2d 305, 309 (11th Cir. 1989).

10. The Defendants plead all applicable immunities, including but not limited to qualified, absolute, discretionary function immunity, and state agent immunity.

11. The Defendants were at all times acting under the color of state law and therefore, they are each entitled to substantive immunity.

12. The Defendants plead the general defense.

13. This Court lacks subject matter jurisdiction due to the fact that even if the Plaintiff's allegations should be proven, the allegations against these Defendants would amount to mere negligence which is not recognized as a deprivation of the Plaintiff's constitutional rights.

14. All claims of the Plaintiff against these Defendants in their official capacity are barred by the Eleventh Amendment to the United States Constitution.

15. The Defendants plead the affirmative defense that the Plaintiff's Complaint fails to contain a detailed specification and factual description of the acts and omissions alleged to render them liable to the Plaintiff.

16. The Defendants plead the affirmative defenses of contributory negligence and assumption of the risk.

17. The Defendants plead the affirmative defense of unclean hands.

18. The Defendants plead the affirmative defense that the Plaintiff has failed to mitigate his own damages.

19. The Plaintiff has failed to exhaust his administrative remedies as mandated by the Prison Litigation Reform Act amendment to 42 U.S.C. §1997e (a) and as such these claims should be dismissed.

20. The Defendants plead the affirmative defense that they are not guilty of any conduct which would justify the imposition of punitive damages against any of them and that any such award would violate the United States Constitution.

21. Pursuant to 28 U.S.C. § 1915 A, this Court is requested to screen and dismiss this case, as soon as possible, either before or after docketing, as this case is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks money damages from the Defendants who are state officers entitled to immunity as provided for in 42 U.S.C. § 1997 (e) (c).

22. The Defendants plead that any injuries that were sustained by the Plaintiff were *de minimis*.

23. The Defendants reserve the right to raise additional defenses.

## DISCLOSURES

In accordance with the July 26, 2006 Special Report Order, the Defendants submit the

following initial disclosures:

1. Attached affidavits of:

    a.      Levan Thomas, Warden II

    b.      Sharon Rogers, COII

    c.      Gwendolyn Givens, COII

    d.      Roosevelt Lewis, COI

    e.      Relford Kendrick, COI

    f.      Grayling Davis, COI

2. The following persons may have personal knowledge of the facts relevant to the claims

asserted by the Plaintiff or the defenses asserted by the Defendants:

    Levan Thomas, Warden II

    Sharon Rogers, COII

    Gwendolyn Givens, COII

    Roosevelt Lewis, COI

    Relford Kendrick, COI

    Grayling Davis, COI

    Plaintiff George Parker

3. Clear and legible copies of the documents relevant to claims or defenses asserted in the

action are as follows:

    g.      Inmate Summary Sheet

h.    Incident Report and Disciplinary Reports concerning the alleged incident

i.    Alabama Department of Corrections, Administrative Regulation 403, concerning Disciplinary Hearing Procedures for Major Rule Violations

j.    Alabama Department of Corrections, Administrative Regulation 433, concerning Administrative Segregation and Housing for Close or Maximum Custody

## STATEMENT OF THE FACTS

The Plaintiff is an inmate within the Alabama Department of Corrections. He is currently confined at the Staton Correctional Facility in Elmore, Alabama. The Plaintiff was sentenced to serve 25 years for Assault II. (Ex. G)

On December 1, 2005, Inmate Parker was taken to the Staton Health Care Unit and was placed in the holding cage until he could be seen by medical staff. (Ex. H) Officer Lewis ordered Inmate Parker to "keep down the noise," which Inmate Parker stated, "Fuck this shit. I'm tired of waiting to be seen. You can write it up. I don't give a fuck." (Ex. H) Officer Lewis asked Inmate Parker for his identification card, which Inmate Parker complied. (Ex. H) However, Inmate Parker continued his insubordinate behavior. (Ex. H)

Officer Lewis reported this incident to Sgt. Rogers. Sgt. Rogers then came to the Health Care Unit and escorted Inmate Parker to the Shift Office. (Ex. H) In the Shift Office, Sgt. Rogers and Warden Thomas counseled Inmate Parker on his negative behavior. (Ex. H) Warden Thomas advised Inmate Parker that he would be assigned to the Holding Tank, pending disciplinary action. (Ex. H) The disciplinary was issued due to the choice of words that Inmate Parker was using toward correctional officers. (Ex. A) Inmate Parker's body chart was completed and reflected that Inmate

Parker was "not hurt." (Ex. H)  No injuries were noted. (Ex. H)  Inmate Parker was then placed in the

Holding Tank. (Ex. H)

The disciplinary action was served that same day, with the disciplinary hearing set for

December 3, 2005.  (Ex. H)  Inmate Parker did not designate any witnesses and he pled guilty to the

offense.  (Ex. H)  The Hearing Officer, Sgt. Gwendolyn Givens, accepted Inmate Parker's guilty

plea. (Ex. C)

Inmate Parker has listed two officers as Defendants that completed and signed paperwork

only. (Ex. E and F)

## ARGUMENT

The Plaintiff is bringing his claims under the provisions of 42 U.S.C. §1983.  Section 1983

states:

> Every person who, under color of any statute, ordinance, regulation, custom,
> or usage, of any State or Territory or the District of Columbia, subjects, or
> causes to be subjected, any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any rights, privileges, or
> immunities secured by the Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other proper proceeding.

42 U.S.C. §1983

This section "provides a remedy when a person acting under color of state law deprives a plaintiff of

a right, privilege, or immunity secured by the Constitution, laws or treaties of the United States."

*Sasser v. Alabama Department of Corrections*, 373 F.Supp.2d 1276, 1290 (M.D. Ala. 2005)  "In

order to establish a claim under Section 1983, a plaintiff must show a violation of a right secured by

the Constitution of the United States, and also that the deprivation of that right was committed by a

person acting under color of state law." *Id.*; see *Graham v. Connor*, 490 U.S. 386, 393-94 (1989);

*Cummings v. DeKalb County*, 24 F.3d 1349, 1355 (11th Cir. 1994).

In *Gardner v. Howard*, 109 F.3d 427, 429-430 (8th Cir. 1997), the Eighth Circuit held "[q]ualified immunity shields government officials from §1983 damage liability unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" (Citing *Harlow v. Fitzgerald*, 457 U.S. 800 (1982)). As the *Sasser* Court stated the threshold question is that of Eleventh Amendment Immunity. *Sasser* at 1291. The Eleventh Amendment immunity "prohibits federal courts from entertaining suits by private parties against States and their agencies." *Alabama v. Pugh*, 438 U.S. 781 (1978) Neither a state nor an agency of the state may be made a defendant in any action in federal court under 42 U.S.C. § 1983. *Pugh*, 438 U.S. 781. There are two (2) exceptions: (1) if the State waives its immunity or (2) if Congress has abrogated the immunity of the State. *Carr v. City of Florence, Ala.*, 916 F. 2d 1521, 1524 (11th Cir. 1990). Article I, §14 of the Alabama Constitution provides "[t]hat the State of Alabama shall never be made a defendant in any court of law or equity." The Defendants have adhered to the statutory laws and to the departmental policies and procedures that govern the security and confinement of the Plaintiff. The Defendants are barred from being sued due to Eleventh Amendment Immunity.

The Plaintiff alleges that excessive force was used in depriving him of his First Amendment Right to Freedom of Speech. This allegation is not true. The State should not restrict freedom of speech based upon content unless there is a compelling interest and the least restrictive means to advance the interest are utilized. *Atlanta Journal and Constitution v. City of Atlanta Department of Aviation*, 322 F.3d 1298, 1306 (11th Cir. 2003); citing *Sable Communications of Cal., Inc. v. FCC*, 492 U.S. 115, 126 (1989). The restriction of speech is analyzed as to the type of property or forum upon which the speech is stated. "The State, no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated." *Atlanta Journal*

8

at 1306; quoting *United States Postal Serv. v. Council of Greenburgh Ass'ns*, 453 U.S. 114, 129-130 (1981).  "On government property that has not been made a public forum, not all speech is equally situated, and the state may draw distinctions which relate to the special purpose for which the property is used." *Atlanta Journal* at 1306; quoting *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 55 (1983).

The courts have continuously recognized that the operation of correctional institutions are, at best, a difficult assignment and that correctional officials must be given broad range in discretion and latitude in which to carry out their duties. *See Hewitt v. Helms*, 459 U.S. 460 (1983).  "Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979); *Sims v. Mashburn*, 25 F. 3d 980 (11th Cir. 1994).

In the case at bar, the state property is that of a prison, which is not a public forum.  The Plaintiff was charged with a violation of rule 57 – insubordination.  According to Administrative Regulation (AR) 403, insubordination is defined as "[a]ny act, gesture, remark or statement which obviously reflects disrespect to lawful authority." (Ex. I)  The officers and the prison system have a duty to maintain control over the inmates and their behaviors.  The Plaintiff used profanity towards the correctional officers assigned to the Staton Health Care Unit. (Ex. H)  Officer Lewis followed procedures to correct the Plaintiff's profane language.  Therefore, the Plaintiff was not deprived of his freedom speech, but rather reprimanded for his disrespectful statements towards the correctional officers.

The Plaintiff alleges that he was subjected to excessive force, which is not true.  The United

States Supreme Court in *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992) held that "whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry [in determining whether a prisoner has suffered unnecessary and wanton pain] is that set out in *Whitney*: Whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." There are certain factors that the courts review when evaluating whether the force was wanton and unnecessary. These factors include: (1) the need for force; (2) the relationship between the need and the amount of force used; (3) the reasonably perceived threat by the prison officer; (4) any efforts that were used to reduce the severity of the forceful response; and (5) the extent of the injury suffered by the prisoner. See *Hudson* at 6-7.

In the present case, the Plaintiff was not subjected to any force. Upon the Plaintiff exhibiting his negative behavior, Officer Lewis instructed the Plaintiff to hold the noise down. (Ex. H) The Plaintiff continued, and Officer Lewis requested and received the Plaintiff's identification card, without incident. (Ex. H) Sgt. Rogers took the Plaintiff to the Shift Office to be counseled and then to be placed in the Holding Tank, without incident. (Ex. H) A body chart was completed that documented that the Plaintiff stated that he was not hurt and that he had no injuries. (Ex. H) Thus, when the above-stated factors are applied to these facts, no force was used at all, much less excessive force. Therefore, this allegation of the Plaintiff being subjected to excessive force is without merit.

The Plaintiff alleges that he was wrongfully punished. The Plaintiff was cited for a rule violation as set forth in AR 403, and argued above. The Plaintiff was taken to the Holding Tank. This action is prescribed in AR 433, Administrative Segregation and Housing for Close or Maximum Custody. AR 433(B)(2) states:

> An inmate may be placed in a single/double segregation cell (depending on circumstances) pending completion of an investigation or a due process hearing. Such administrative segregation maybe used when necessary to ensure the safety of the inmate or the security of the institution. Documentation must be provided as to the reason for administrative segregation. The Warden or Warden's designee will ensure that no inmate remains in administrative *segregation status* longer than necessary. An inmate's administrative segregation status should be reviewed by the Warden or Warden's designee within 72 hours, excluding weekends and holidays.

This AR was followed by the security staff. The Plaintiff was placed in administrative segregation on December 1, 2005. The Plaintiff had his disciplinary hearing on December 3, 2005, which was within the 72-hour time period allowed under AR 433. Documentation was provided to the Plaintiff and to the file. (Ex. H) Therefore, the Plaintiff's claim that he was wrongfully punished is without merit.

The Plaintiff also alleges that Sgt. Rogers, Warden Thomas and Officer Lewis conspire to wrongfully punish him by having the supervisor write the incident report for the officer. This allegation is false. Per AR 302, Incident Reporting, the applicable section, V.B.1.a. states "[a]t the time an incident occurs, the reporting staff member shall ensure: An ADOC Form 302-A, Incident Report, is reviewed for accuracy, modified if necessary, and approved by a supervisor." "Screening disciplinary reports are a task that the supervisors are given as one of their duties." (Ex. B) Therefore, there was no conspiracy between any of the Defendants.

Wherefore these premises considered, the Defendants pray that this Honorable Court will find that the Plaintiff is not entitled to any relief and this complaint should be dismissed.

Respectfully submitted,

/s/ Kim T. Thomas
KIM T. THOMAS (THO115)
DEPUTY ATTORNEY GENERAL
GENERAL COUNSEL


/s/ Tara S. Knee
TARA S. KNEE (KNE003)
ASSISTANT ATTORNEY GENERAL
ASSISTANT GENERAL COUNSEL

**ADDRESS OF COUNSEL:**

**ALABAMA DEPARTMENT OF CORRECTIONS**
**LEGAL DIVISION**
**301 S. RIPLEY STREET**
**P.O. BOX 301501**
**MONTGOMERY, AL 36130**
**(334) 353-3881**

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was served upon:

Inmate George PArker
AIS #140922
Staton Correctional Facility
P.O. Box 56
Elmore, AL 36022

by placing a copy of same in the United States Mail, first class postage prepaid and properly

addressed this the 5th day of September, 2006.


/s/ Tara S. Knee
TARA S. KNEE (KNE003)
ASSISTANT ATTORNEY GENERAL
ASSISTANT GENERAL COUNSEL

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

GEORGE PARKER, 140922,      )
                                  )
          Plaintiff,        )
                                  )
      v.                  )   CIVIL ACTION NO. 2:06-cv-649-WHA
                                  )
GWENDOLYN GIVENS, et al.,    )
                                  )
          Defendants.    )

## **A F F I D A V I T**

**State of Alabama**    :

**Elmore County**     :

Before me, the undersigned authority, a Notary Public in and for said County and State of Alabama at Large, personally appeared Levan Thomas, who being known to me and being by me first duly sworn, deposes and says on oath as follows:

My name is Levan Thomas. I am presently employed as a Correctional Warden II with the Alabama Department of Corrections at Staton Correctional Facility, P.O. Box 56, Elmore, Alabama 36025. I am over twenty-one years of age and have personal knowledge of the facts set forth below.

I have reviewed the complaint of Inmate George Parker and this is my response to his complaint.

In this civil action, Inmate Parker was given a disciplinary for Violation of Rule #57 – Insubordination by Officer Roosevelt Lewis. Inmate Parker alleges excessive force was used to stop Inmate Parker from talking to himself while waiting to see the doctor.

**EXHIBIT** _A_

Inmate Parker alleges been written up for talking. Inmate Parker was written a disciplinary by Officer Roosevelt Lewis for the choice of words being used when he was talking. Inmate Parker was charged with 'Insubordination' to which, at the disciplinary hearing, Inmate Parker pled guilty to the charge.

Warden Thomas verbally reprimanded Inmate Parker concerning Inmate Parker negative behavior and advised Sgt. Sharon Rogers to have Inmate Parker placed in Staton's Holding Tank, pending disciplinary action for Rule Violation #57- Insuborniation.

To my knowledge, the above- related facts are the entirety of my involvement with Inmate George Parker concerning the allegations on which his complaint is based.

I deny that I have violated any well-established civil rights of Inmate Parker.


_____
LEVAN THOMAS

SWORN TO and SUBSCRIBED before me this __14__ day of August 2006.


_____
NOTARY PUBLIC

_12_/_06_/_2008_____
My Commission Expires:

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

GEORGE PARKER, #140922            )
                                  )
            Plaintiff,            )
                                  )
      v.                          )    CIVIL ACTION NO.2:06-CV-649-WHA
                                  )
GWENDOLYN GIVENS, et. al.,        )
                                  )
            Defendants.           )

## A F F I D A V I T

**State of Alabama**     :

**Elmore County**        :

Before me, the undersigned authority, a Notary Public in and for said County and State of Alabama at Large, personally appeared Sharon Rogers, who being known to me and being by me first duly sworn, deposes and says on oath as follows:

My name is Sharon Rogers. I am presently employed as a Correctional Officer II with the Alabama Department of Corrections at Staton Correctional Facility, P.O. Box 56, Elmore, Alabama 36025. I am over twenty-one years of age and have personal knowledge of the facts set forth below.

I have reviewed the complaint of Inmate George Parker and this is my response to his complaint.

In this civil action, Inmate Parker was given a disciplinary for violation of Rule #57-Insubordination by Officer Roosevelt Lewis. Inmate Parker alleges excessive force was used to stop Inmate Parker from talking to himself while waiting to see the doctor.

EXHIBIT __B__

Inmate Parker alleges Sgt. Rogers conspired with Warden Thomas to lock Inmate Parker up for being insubordinate to Officer Lewis.  Inmate Parker alleges that Sgt. Rogers wrote the disciplinary for Officer Roosevelt Lewis.  Screening disciplinary reports are a task that the Supervisors are given as one of their duties.

To my knowledge, the above- related facts are the entirety of my involvement with Inmate George Parker concerning the allegations on which his complaint is based.

I deny that I have violated any well-established civil rights of Inmate Parker.


SHARON ROGERS

SWORN TO and SUBSCRIBED before me this _14_ day of August 2006.


NOTARY PUBLIC


_12_/_06_/_2008_
My Commission Expires:

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

GEORGE PARKER, #140922    )
    )
    Plaintiff,    )
    )
v.    )  CIVIL ACTION NO.2:06-CV-649-WHA
    )
GWENDOLYN GIVENS, et. al.,    )
    )
    Defendants.    )

## A F F I D A V I T

**State of Alabama**    **:**

**Elmore County**    **:**

    Before me, the undersigned authority, a Notary Public in and for said County and State of Alabama at Large, personally appeared Roosevelt Lewis, who being known to me and being by me first duly sworn, deposes and says on oath as follows:

    My name is Gwendolyn Givens.  I am presently employed as a Correctional Officer II with the Alabama  Department of Corrections at Staton Correctional Facility, P.O. Box 56, Elmore, Alabama 36025.  I am over twenty-one years of age and have personal knowledge of the facts set forth below.

    I have reviewed the complaint of Inmate George Parker and this is my response to his complaint.

    In this civil action, Inmate Parker received a disciplinary for violation of rule #57-Insubordination by Officer Roosevelt Lewis.  Sergeant Gwendolyn Givens was the Hearing Officer for the disciplinary.  Inmate George Parker's plea at the Disciplinary Hearing was 'Guilty' to the charge of rule violation #57- Insubordination.

**EXHIBIT** _C_

To my knowledge, the above-related facts are the entirety of my involvement with Inmate George Parker concerning the allegations on which his complaint is based.

I deny that I have violated any well-established civil rights of Inmate Parker.

GWENDOLYN GIVENS

SWORN TO and SUBSCRIBED before me this __14__ day of August 2006.

NOTARY PUBLIC

12/06/2008

My Commission Expires:

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

GEORGE PARKER, #140922          )
                               )
            Plaintiff,          )
                               )
        v.                      )   CIVIL ACTION NO.2:06-CV-649-WHA
                               )
GWENDOLYN GIVENS, et. al.,      )
                               )
            Defendants.         )

## A F F I D A V I T

**State of Alabama**       :

**Elmore County**          :

Before me, the undersigned authority, a Notary Public in and for said County and State of Alabama at Large, personally appeared Roosevelt Lewis, who being known to me and being by me first duly sworn, deposes and says on oath as follows:

My name is Roosevelt Lewis. I am presently employed as a Correctional Officer I with the Alabama Department of Corrections at Staton Correctional Facility, P.O. Box 56, Elmore, Alabama 36025. I am over twenty-one years of age and have personal knowledge of the facts set forth below.

I have reviewed the complaint of Inmate George Parker and this is my response to his complaint.

In this civil action, Inmate Parker was written a disciplinary by Officer Roosevelt Lewis for rule violation #57 – Insubordination. Officer Roosevelt Lewis was the Officer assigned to work in the Health Care Unit on the day Inmate Parker alleges the incident occurred.

**EXHIBIT** D

To my knowledge, the above-related facts are the entirety of my involvement with Inmate George Parker concerning the allegations on which his complaint is based.

I deny that I have violated any well-established civil rights of Inmate Parker.

ROOSEVELT LEWIS

SWORN TO and SUBSCRIBED before me this _14_ day of August 2006.

NOTARY PUBLIC

12/06/2008
My Commission Expires:

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

GEORGE PARKER, #140922     )
     )
     Plaintiff,     )
     )
     v.     )  CIVIL ACTION NO.2:06-CV-649-WHA
     )
GWENDOLYN GIVENS, et. al.,     )
     )
     Defendants.     )

## A F F I D A V I T

**State of Alabama**    :

**Elmore County**    :

Before me, the undersigned authority, a Notary Public in and for said County and State of Alabama at Large, personally appeared Relford Kendrick, who being known to me and being by me first duly sworn, deposes and says on oath as follows:

My name is Relford Kendrick.  I am presently employed as a Correctional Officer I with the Alabama Department of Corrections at Staton Correctional Facility, P.O. Box 56, Elmore, Alabama 36025.  I am over twenty-one years of age and have personal knowledge of the facts set forth below.

I have reviewed the complaint of Inmate George Parker and this is my response to his complaint.

In this civil action, Inmate Parker received a disciplinary for violation of rule #57- Insubordination by Officer Roosevelt Lewis.  Officer Kendrick was tasked with doing the CELL BLOCK INSPECTION SHEET on the Unit Inmate Parker was being

EXHIBIT  E

placed in  after being verbally reprimanded by Warden Thomas concerning Inmate Parker

negative behavior.

  To my knowledge, the above-related facts are the entirety of my involvement with

Inmate George Parker concerning the allegations.

  I deny that I have violated any well-established civil rights of Inmate Parker.

RELFORD KENDRICK

SWORN TO and SUBSCRIBED before me this _14_ day of August 2006.

NOTARY PUBLIC

12/06/2008
My Commission Expires:

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

GEORGE PARKER, #140922          )
                               )
          Plaintiff,           )
                               )
     v.                        )   CIVIL ACTION NO.2:06-CV-649-WHA
                               )
GWENDOLYN GIVENS, et. al.,     )
                               )
          Defendants.          )

## AFFIDAVIT

**State of Alabama**     :

**Elmore County**        :

Before me, the undersigned authority, a Notary Public in and for said County and State of Alabama at Large, personally appeared Grayling Davis, who being known to me and being by me first duly sworn, deposes and says on oath as follows:

My name is Grayling Davis.  I am presently employed as a Correctional Officer I with the Alabama  Department of Corrections at Staton Correctional Facility, P.O. Box 56,  Elmore, Alabama 36025.  I am over twenty-one years of age and have personal knowledge of the facts set forth below.

I have reviewed the complaint of Inmate George Parker and this is my response to his complaint.

In this civil action, Inmate parker received a disciplinary for violation of rule #57-Insubordination by Officer Roosevelt Lewis.  Officer G. Davis was tasked with  serving the INMATE DETENTION  NOTIFICATION and the ALABAMA DEPARTMENT OF CORRECTIONS DISCIPLINARY REPORT  on Inmate Parker after Inmate Parker

**EXHIBIT   F**

was placed in the single cell.

    To my knowledge, the above-related facts are the entirety of my involvement with Inmate George parker concerning the allegations.

    I deny that I have violated any well-established civil rights of Inmate Parker.

GRAYLING DAVIS

SWORN TO and SUBSCRIBED before me this ___14___ day of August 2006.

NOTARY PUBLIC

12/06/2008
My Commission Expires:

```
                           DISPLAY INMATE SUMMARY DATA                 PRODUCTION 8
 30/AUG/2006     10:18:10     CDSUM      499   L-TARA       CDSUM01     604
----------------------------------------------------------------------------
AIS: 00140922B   INMATE: PARKER, GEORGE STEVE            RACE: B  SEX:  M

INST: 070-STATON CORRECTIONAL CENTER      JAIL CR: 0182D DOB: 02/28/1961
SSN: 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 PAR CONS DT: 01/2012   CURR CUST: MED9  CURR CUST DT:05/14/2004
ALIAS: "LITTLE SPECK",             ALIAS: "TOO PIE",
ADM TP: NEW COMIT FROM CRT W/O REV OF   STATUS: NEW COMIT FROM CRT W/O REV OF
INIT SENT DT:03/26/2004 ADM DT: 03/26/2004 DEAD TIME: 00Y 00M 00D
                            N                                          TY
COUNTY       SENT DT   CASE  L CRIME                        TERM       PE
DALLAS       03/26/2004 000294 Y ASSAULT II                25Y00M00D   CS




                   NO MORE RCDS THIS TYPE AVAIL
INMATE HAS 005DISCIPLINARIES RESULTING IN LOSS OF 000Y00M00D OF GOOD TIME.
INMATE HAS 004TRANSFER RECORDS ON FILE.
INMATE HAS 00 DETAINER/WARRANT RECORDS ON FILE.
 TOTAL  TERM  REV GOOD TIME  MIN REL DT  TOT GOOD TIME  SHORT DATE  LONG DATE
 025Y 00M 00D  000Y 00M 00D  09/23/2028  000Y 00M 00D   09/23/2028  09/23/2028
```

**EXHIBIT** G

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

GEORGE PARKER, #140922            )
                                  )
            Plaintiff,            )
                                  )
      v.,                         )   CIVIL ACTION NO.2:06-CV-649-WHA
                                  )
GWENDOLYN GIVENS, et.al.,         )
                                  )
            Defendants            )

## A F F I D A V I T

**State of Alabama**      :

**Elmore County**         :

Before me, the undersigned authority, a Notary Public in and for said County and

State of Alabama at Large, personally appeared Annie Latimore, who being known to me

and being by me first duly sworn, deposes and says on oath as follows:

My name is Annie Latimore.  I hereby certify and affirm that I am the Alternate

Custodian of Records at Staton Correctional Facility, P. O. Box 56, Elmore, Alabama

36025.  I am over twenty-one years of age and am competent to testify to the matters

stated herein.

The attached *State of Alabama, Department of Corrections Institutional*

*Incident Report* number SCF-05-1230 consisting of five pages, and *Alabama*

*Department of Corrections Disciplinary Reports* number SCF-05-1230 consisting of

three pages and one page respective are true, and exact and correct photocopies of

documents maintained here in the institutional files.

EXHIBIT __H__

I further certify and affirm that said documents are maintained in the usual and ordinary course of business at Staton Correctional Facility and that said documents and entries therein were made reasonably near the time that such acts, events and transactions referred to therein are said to have occurred.

ANNIE LATIMORE

SWORN TO and SUBSCRIBED before me this _____ day of August  2006.

NOTARY PUBLIC

04/04/10
My Commission Expires:

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS

# INCIDENT REPORT

| 1. Institution: **Staton Correctional Facility** | 2. Date: **December 1, 2005** | 3. Time: **10:50 a.m.** | 4. Incident Number: **SCF- 05- 1230** | Class Code: **C** |
|---|---|---|---|---|

| 5. Location Where Incident Occurred: **Staton Health Care Unit/Holding Cage** | 6. Type of Incident: **R-V#57, Insubordination** |
|---|---|

| 7. Time Incident Reported: **10:55 a.m.** | 8. Who Received Report: **Sgt. Sharon Rogers** *Sgt. Sharon Rgrs* |
|---|---|

**9. Victims:**

| | Name | | | AIS |
|---|---|---|---|---|
| a. | _____ | | No. | _____ |
| b. | _____ | | No. | _____ |
| c. | _____ | | No. | _____ |

| 10. Suspects: | Name | AIS | 11. Witnesses: | Name | AIS |
|---|---|---|---|---|---|
| a. | George Parker | No. B/140922 | a. N/A | | No. |
| b. | | No. | b. | | No. |
| c. | | No. | c. | | No. |

**PHYSICAL EVIDENCE:**

12. Type of Evidence
N/A

13. Description of Evidence:
N/A

14. Chain of Evidence:
a. N/A
b.

**15. Narrative Summary:**

On December 1, 2005, at Staton Correctional Facility, Officer Roosevelt Lewis was assigned as Staton Health Care Unit Officer.   At approximately 10:50 a.m., Officer Lewis ordered Inmate George Parker B/140922 to keep down the noise while inside the holding cage.  Inmate Parker stated to Officer Lewis, "Fuck this shit.  I'm tired of waiting to be seen.  You can write it up.  I don't give a fuck." Officer Lewis opened the door to the holding cage.   Officer Lewis asked, Inmate Parker for Inmate Parker's I.D. Card.  Inmate Parker complied with Officer Lewis' order.
Inmate Parker continued Inmate Parker's insubordinate behavior.

At approximately 10:52 a.m., Officer Lewis notified Sergeant Sharon Rogers of the incident, via two-way radio.
At approximately 10:55 a.m., Sgt. Sharon Rogers entered Staton's Health Care Unit.  Officer Lewis reported the incident to Sgt. Rogers.  Sgt. Rogers escorted Inmate Parker to Staton's Shift Office.

At approximately 11:00 a.m., in Staton Shift Office, Inmate Parker was counselled by Warden II, Levan Thomas and Sgt. Rogers.  Warden Thomas verbally reprimanded Inmate Parker concerning Inmate Parker's  negative behavior.  Warden Thomas advised that Inmate Parker be assigned to Staton's Holding Tank, pending disciplinary action for Rule Violation #57- Insubordination.
At approximately 3:20 p.m. Nurse C. Lewis completed a Body Chart concerning Inmate Parker.

At approximately 3:25 p.m. Inmate Parker was placed in Staton Holding Tank, pending disciplinary action for Rule violation #57- Insubordination.  No further action taken at this time.

Note: See attached copies of Body Chart, Detention Notification, Cell Inspection Sheet, Inventory Sheet.

*Roosevelt Lewis, COI*
Roosevelt Lewis, COI

**ADOC Form 302-A – June 1, 2005**

**PHS**
PRISON
HEALTH
SERVICES
INCORPORATED

# EMERGENCY

| ADMISSION DATE | TIME | ORIGINATING FACILITY    SCC | ☐ SICK CALL   ☐ EMERGENCY |
|---|---|---|---|
| 12 / 1 / 05 | 3:0  ☐ AM ☐ PM | ☐ SIR ☐ PDL ☐ ESCAPEE ☐ | ☐ OUTPATIENT |

| ALLERGIES    NKDA | CONDITION ON ADMISSION ☐ GOOD  ☐ FAIR  ☐ POOR  ☐ SHOCK  ☐ HEMORRHAGE  ☐ COMA |
|---|---|

VITAL SIGNS: TEMP  98⁸  ORAL/RECTAL  RESP. 20  PULSE 69  B/P 116, 84  RECHECK IF SYSTOLIC _____ / ____ (<100> 50)

| NATURE OF INJURY OR ILLNESS | | ABRASION /// | CONTUSION # | BURN xx xx | FRACTURE Z Z | LACERATION / _____ SUTURES |
|---|---|---|---|---|---|---|

S. Body chest per Doc
" I am not hurt"

SATS 96%



PROFILE RIGHT OR LEFT

PHYSICAL EXAMINATION

O - No s/s w/ any scratches
bruises noted. Denies
any pain
① Nurse needed
② Refer t. HCP

RIGHT OR LEFT

| ORDERS / MEDICATIONS / IV FLUIDS | TIME | BY |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

DIAGNOSIS

INSTRUCTIONS TO PATIENT

| DISCHARGE DATE | TIME | RELEASE / TRANSFERRED TO | CONDITION ON DISCHARGE |
|---|---|---|---|
| 12 / 1 / 05 | 3:05 ☐ AM ☐ PM | ☐ DOC ☐ AMBULANCE ☐ | ☐ SATISFACTORY ☐ POOR ☐ FAIR ☐ CRITICAL |

| NURSE'S SIGNATURE   G. Lewis | DATE  12/1/05 | PHYSICIAN'S SIGNATURE | DATE | CONSULTATION |
|---|---|---|---|---|

| INMATE NAME (LAST, FIRST, MIDDLE)   Parker, George | DOC# 140922 | DOB 2/28/61 | R/S | FAC. SCC |
|---|---|---|---|---|

PHS-MD-70007          (White – Record Copy, Yellow – Pharmacy Copy)

STATON CORRECTIONAL FACILITY
**CELL BLOCK INSPECTION SHEET**

TIME: _1 45 pm_    DATE: _12-1-05_

INMATE: _GEORGE PARKER_ AIS #: _B/m 140922_ CELL #: _Holding-Tank_

INSPECTING OFFICERS'S SIGNATURE: _Relford Kendrick_

WALLS: _Clean_

FLOORS: _Clean_

BED: _has mattress_

COMMODE: _flushes_

LAVATORY: _works_

OTHER ITEMS: _none_

I certify that my cell _Holding-Tank_ has been inspected by Officer _RELFORD KENDRICK_

on the _1ST_ day of _December_ 200_5_, and the above noted defects were found.
I am responsible for keeping my cell in the same condition outlined.

_George Parker_
INMATE'S SIGNATURE

I certify that I have explained the rules and regulations to the above named inmate and have completely
searched the cell for any contraband and there was no contraband found on this date:

_12-1-05_         _1 45 pm_
DATE AND TIME CELL WAS SEARCHED

_Relford Kendrick COI_
Officer's Signature

| | | | |
|---|---|---|---|
| ✓ | Blanket | ✓ | Toothbrush |
| ✓ | Sheets | ✓ | Tube of Toothpaste |
| ✓ | Pair Socks | O | Comb |
| ✓ | Pair of Shoes | ✓ | Wash Cloth |
| ✓ | Under Shorts | ✓ | Bar of Soap |
| ✓ | Under Shirt | ✓ | Towel |
| ✓ | Pillow | ✓ | Shirt |
| ✓ | Pillow Case | ✓ | Pants |
| ✓ | Mattress | O | Jacket (weather detates) |

Issuing Officer: _Relford Kendrick_

Processing Officer: _Relford Kendrick COI_

STATON CORRECTIONAL FACILITY
INMATE DETENTION NOTIFICATION

FROM:   Sgt. Sharon Rogers                            TEAM LEADER

TO: INMATE   George Parker              AIS#   B/140922        DOB:  2-28-61

REF: **ADMINISTRATIVE SEGREGATION**

You are placed in Administrative Segregation for:

Violation of Rules #57, Insubordination and #29, Assault on Person Associated with the ALDOC.

Circumstances are as follows (be specific):

On December 1, 2005, at approximately 10:50 a.m., Officer Roosevelt Lewis (Staton Health Care Officer) ordered Inmate George Parker B/140922 to keep the noise down while in the holding cage. Inmate Parker stated to Officer Lewis, "Fuck this shit. I'm tired of waiting to be seen. You can write it up. I don't give a fuck." Officer Lewis opened the holding cage and ordered Inmate Parker to give Officer Lewis Inmate Parker's I. D. Card. Officer Lewis reached with Officer Lewis' right hand to receive Inmate Parker's I. D. Card. Inmate Parker then pushed Officer Lewis hand away.

This is authorized by   Warden Levan Thomas        this  1st   day of   December, 2005
Your confinement in Segregation is for a period of not more than seventy-two (72) hours. Prior to 72 hours confinement, you will be released, served a PR (Progress Review), disciplinary notice or extended. Extensions must be authorized by the Assistant Warden for further investigation time when justified. The 72 hour confinement excludes weekends and holidays. You may also be confined in Segregation by order of I & I  for investigation, criminal prosecution, etc.
While in Administrative Segregation, you will be seen by the Shift Supervisor, a nurse, and officer's daily. You will be seen by a medical doctor upon request from the nurse. You **will not** be permitted television **(No exceptions)** personal newspapers, books, or magazines. You will be given a verbal and written orientation concerning policy and procedures of the Segregation Unit at the time you enter the Unit. You will be provided a healthy environment and personal hygiene items (soap, towel, comb, toothbrush and face cloth). You are not allowed to keep personal items. Clothing and bedding will be issued by the Segregation Unit. Reading materials allowed are one (1) religious book, one (1) additional book or magazine from the Institutional Library and one (1) Alcohol Anonymous and/or Narcotic Anonymous book. You may receive one (1) visit per month by person(s) on your approved visiting list. Request for visits must be sent to the Assistant Warden. You will be permitted one (1) phone call per month by request to the Assistance Warden. Canteen privileges will be authorized on a limited basis. Your signature below indicates that you have collected and secured all of your property from population, and acknowledge receipt of the detention notice

INMATE SIGNATURE  *George Parker*              AIS #  *140922*

DATE:  Dec. 1st, 2005        TIME:   3:13 P.m.

WITNESS:  *Davis* COI.

* Inmate's property has been collected and placed into the custody of the Segregation Unit.

INSTITUTION: Staton CF

INMATE George Parker 140922    DATE 1 December 2005

| | | | | |
|---|---|---|---|---|
| 1 | 1. | BIBLE (1) | 2 | 9. Reebok TENNIS SHOES - WHITE (1 pr.) |
| Ø | 2. | STATIONARY/STAMPS | 1 | 10. SHOWER SHOES (1 pr.) |
| 1 | 3. | ~~PENCIL~~ (1) INK Pen | Ø | 11. RELIGIOUS NECKLACE (1) - $25.00 VALUE OR LESS |
| 5 | 4. | SOCKS - WHITE (6 pr.) | Ø | 12. WALLET (1) |
| 4/5 | 5. | UNDERSHIRTS/UNDERWEAR - WHITE (6) | Ø | 13. WRIST WATCH (1) - $25.00 VALUE OR LESS |
| | 6. | HANDKERCHIEFS (6) | Ø | 14. WEDDING BAND (1) - $50.00 VALUE OR LESS |
| Ø | 7. | TOILET ARTICLES - CLEAR, NON-GLASS CONTAINERS | Ø | 15. RADIO — EARPHONES (1 ea.) - PURCHASED FROM CANTEEN |
| 1 | 8. | LEGAL PAPERS | 2 | 16. BOOKS (3) - RELIGIOUS, LEGAL OR EDUCATIONAL (APPROVAL BY WARDEN REQUIRED) |

## DECLARATION OF VALUE

I UNDERSTAND THAT RELIGIOUS NECKLACES OR WRIST WATCHES VALUED AT MORE THAN $25.00, AND WEDDING BANDS VALUED AT MORE THAN $50.00 ARE UNAUTHORIZED AND MUST BE SENT HOME AT MY EXPENSE WITHIN THIRTY (30) DAYS OR IT WILL BE DONATED TO CHARITY OR DESTROYED. I HEREBY DECLARE THE VALUE OF MY PERSONAL PROPERTY TO BE:

RELIGIOUS NECKLACE $ Ø    WRIST WATCH $ Ø    WEDDING BAND $ Ø

George Parker 140922                     M Davis CO1
(INMATE SIGNATURE)                       (WITNESS)

## PROPERTY STORED IN THE RECEIVING AREA:

YOU HAVE THIRTY (30) CALENDAR DAYS FROM THE ABOVE DATE TO DISPOSE OF THE FOLLOWING ITEMS. YOU MAY SEND THE BELOW ITEMS HOME BY VISITORS, MAIL THE ITEMS HOME AT YOUR EXPENSE, OR DONATE THE ITEMS TO CHARITY. IF THESE ITEMS ARE NOT REMOVED IN THIRTY (30) DAYS, THEY WILL BE DESTROYED. BELOW ARE THE ITEMS YOU ARE NOT AUTHORIZED TO KEEP.

1 pair of Sandals, 1 hair brush, 1 soap dish, 3 bars of soap, 1 shaving cream, 1 Tooth Brush, 1 Tooth paste 2 deodorants, 4 Cards of KOP medication, 2 tubes of anti fungal cream, 1 VO5 shampoo, 1 bottle of Lotion, 1 Blue Magic Hair Grease, 1 Towel, 1 both Cloth, 1 Thermal Under Wear Top, 1 master Key Lock, 1 finger nail Clipper, 1 brown leather belt 1 State belt, 1 State shirt, 1 State pants, 1 State Jacket

George Parker 140922                     M Davis CO1
(INMATE SIGNATURE)                       (WITNESS)

*(See reverse side for instructions)*

N795
Rev. 6/9/83

SCP-05-1230

ALDOC Form 225B

# ALABAMA DEPARTMENT OF CORRECTIONS
## DISCIPLINARY REPORT

1.  Inmate: **George Parker**          Custody: **Medium**          AIS: **B/140922**

2.  Facility: **STATON CORRECTIONAL FACILITY**

3.  The above named inmate is being charged by **Officer Roosevelt Lewis** with violation of rule number **57** specifically **Insubordination** from regulation # **403** which occurred on or about **December 1, 2005** at (time) **10:50** (am ), Location: **Staton Health Care Unit Holding Cage** . A hearing on this charge will be held after 24 hours from service.

4.  Circumstances of the violation(s) are as follows: **On December 1, 2005, , at Staton Correctional Facility, Officer Roosevelt Lewis was assigned as Staton Health Care Unit Officer.  At approximately 10:50 a.m. Officer Lewis ordered Inmate George Parker B/140922 to keep down the noise while inside the holding cage.  Inmate Parker stated to Officer Lewis, "Fuck this shit.  I'm tired of waiting to be seen.  You can write it up.  I don't give a fuck."  Inmate Parker's statements were disrespectful to Lawful Authority.  Therefore, Inmate Parker is in violation of Rule-V#57, Insubordination.**

**December 1, 2005**                          **Officer Roosevelt Lewis, COI**
_____                    _____
Date                                       Arresting Officer / Signature / Rank

5.  I hereby certify that I have personally served a copy of the foregoing upon the above named inmate and I informed inmate of his/her right to present a written or oral statement at the hearing and to present written questions for the witnesses on this the 1st day of December , 2005, at (time) 3:08 (am/pm).

_____                    Refusal to sign _____
Serving Officer / Signature / Rank          Inmate's Signature / AIS Number

6.  Witnesses desired?   (NO) George Parker          YES _____
                         Inmate's Signature                    Inmate's Signature

7.  If yes, list: _____

8.  Hearing Date December 3, 2005 Time 8:00 A.M.          Place Shift Commander Office.

9.  Inmate must be present in Hearing Room.  If he/she is not present explain in detail on additional page and attach.

10. A finding is made that inmate (is) is not) capable of representing himself.

_____
Signature / Hearing Officer

11. Plea: _____ Not Guilty  George Parker (Guilty)

12. The Arresting Officer, Inmate, and all witnesses were sworn to tell the truth.

_____
Signature / Hearing Officer

Restriction End:
3/3/06    ENTERED
          C&W

Annex C to AR 403  (Page 1 of 5)

13. Arresting Officer's testimony (at the hearing):  On December 1, 2005, at Staton Correctional Facility, Officer Roosevelt Lewis was assigned as Staton Health Care Unit Officer. At approximately 10:50 AM, Officer Lewis ordered Inmate George Parker, B/140922, to keep down the noise while inside the holding cage. Inmate Parker stated to Officer Lewis, "Fuck this shit. I'm tired of waiting to be seen. You can write it up. I don't give a fuck." Inmate Parker's statements were disrespectful to lawful authority.

14. Inmate's Testimony:  Inmate George Parker, B/140922, pled guilty to the listed disciplinary charge of Rule Violation #57 / Insubordination.

Witness:  None submitted          Substance of Testimony:

Witness:  None submitted          Substance of Testimony:

Witness:  None submitted          Substance of Testimony:

15. The inmate was allowed to submit written question to all witnesses.  Copy of questions and answers are attached.

Signature / Hearing Officer

16. The following witnesses were not called  - Reason not called

1.  N/A
2.  N/A
3.  N/A

17. After hearing all testimony, the Hearing Officer makes the following findings of fact: (Be Specific)
The Hearing Officer finds that:    On December 1, 2005, at approximately 10:50 AM, at Staton Correctional Facility, Inmate George Parker, B/140922, did state to Officer Roosevelt Lewis, "Fuck this shit. I'm tired of waiting to be seen. You can write it up. I don't give a fuck." Inmate Parker's remarks obviously reflected disrespect to Officer Lewis' lawful authority. This type of behavior will not be condoned nor tolerated at Staton Correctional Facility. Therefore, the hearing officer finds Inmate Parker guilty of Rule Violation #57/Insubordination.

18. Basis for Finding of Fact:    This finding is based on the testimony of Officer Roosevelt Lewis, the arresting officer, who stated, under oath, that Inmate George Parker, B/140922, was insubordinate by stating, "Fuck this shit. I'm tired of waiting to be seen. You can write it up. I don't give a fuck." Inmate Parker's remarks were disrespectful to Officer Lewis' lawful authority. The hearing officer accepts Inmate Parker's guilty plea.

19. Hearing Officer's Decision:    __X__ Guilty    _____ Not Guilty

20. Recommendation of Hearing Officer:    Loss of (90) days canteen and visitation.

_____

Signature / Hearing Officer

Gwendolyn Givens, COII
Typed Name and Title

21. Warden's Action – Date    12/6/05

(Approved)

Disapproved

Other (specify)

22. Reason if more then 30 calendar days delay in action.

23. I hereby certify that a completed copy of the foregoing Disciplinary Report was served on the above Named inmate on this the __8__ day of DECEMBER 2005 at (time) 5:33 (am pm).

Sgt. Richard Gonzalez, COII
Signature / Serving Officer / Title

Refused to Sign Sgt. Richard Gonzalez
Inmate's Signature and AIS Number

ALDOC Form 225B

## ALABAMA DEPARTMENT OF CORRECTIONS
### DISCIPLINARY REPORT

1.    Inmate: **George Parker**    Custody: **Medium**    AIS: **B/140922**

2.    Facility: **STATON CORRECTIONAL FACILITY**

3.    The above named inmate is being charged by **Officer Roosevelt Lewis** with violation of rule number **29** specifically **Assault on a Person Associated with the ALDOC** from regulation # **403** which occurred on or about **December 1, 2005** at (time) **10:50** (am ), Location: **Staton Health Care Unit Holding Cage** . A hearing on this charge will be held after 24 hours from service.

4.    Circumstances of the violation(s) are as follows: **On December 1, 2005, , at Staton Correctional Facility, Officer Roosevelt Lewis was assigned as Staton Health Care Unit Officer.  At approximately 10:50 a.m., Officer Lewis ordered Inmate George Parker B/140922 to keep down the noise while inside the holding cage.  Inmate Parker stated to Officer Lewis, "Fuck this shit.  I'm tired of waiting to be seen.  You can write it up.  I don't give a fuck." Officer Lewis ordered Inmate Parker to give Officer Lewis Inmate Parker's I.D. Card.  Officer Lewis reached out with Officer Lewis' right hand to receive Inmate Parker's I.D Card.  Inmate Parker then pushed Officer Lewis hand away.  Inmate Parker's actions places Inmate Parker in violation of Rule #29, Assault on a Person Associated with the ALDOC.  Therefore, Inmate Parker is charged with Rule-V# 29, Assault on a Person Assoicated with the ALDOC.**

**December 1, 2005**        Officer Roosevelt Lewis, COI    *Roosevelt L. COI*
_____        _____
Date                    Arresting Officer / Signature / Rank

5.    I hereby certify that I have personally served a copy of the foregoing upon the above named inmate and I informed inmate of his/her right to present a **written** or oral statement at the hearing and to present written questions for the witnesses on this the **1st** day of **December**, 200**5**, at (time) **3:04** (am/pm)

*Broughi A. Davis COI.*              *Refused to Sign / Broughi A. Davis COI.*
_____        _____
Serving Officer / Signature / Rank        Inmate's Signature / AIS Number

6.    Witnesses desired?   (NO) *George Parker*        YES _____
                                Inmate's Signature                   Inmate's Signature

7.    If yes, list: _____

_____

8.    Hearing Date _____ Time _____ Place _____

9.    Inmate must be present in Hearing Room.  If he/she is not present explain in detail on additional page and attach.

10.   A finding is made that inmate  (is / is not) capable of representing himself.

_____
Signature / Hearing Officer

11.   Plea: _____ Not Guilty _____ Guilty

12.   The Arresting Officer, Inmate, and all witnesses were sworn to tell the truth.



STATE OF ALABAMA

**DEPARTMENT OF CORRECTIONS**

Research, Monitoring, & Evaluation
Post Office Box 301501
Montgomery, Alabama 36130-1501

**Bob Riley**
GOVERNOR

**Donal Campbell**
COMMISSIONER

**January 30, 2003**

**ADMINISTRATIVE REGULATION**
**NUMBER          403**

**OPR: INSTITUTIONS**

**DISCIPLINARY HEARING PROCEDURES FOR MAJOR RULE VIOLATIONS**

I    **GENERAL**

A.    This regulation establishes policies/procedures governing the conduct and disposition of Disciplinary Hearings for inmates in the custody/control of the Alabama Department of Corrections (ALDOC). The Commissioner, his designee(s), Wardens and other ALDOC employees whose duties involve the Hearing or processing of disciplinary proceedings are responsible for following the provisions of this regulation. All procedures require final action by the Institutional Head or his/her designee. The Institutional Head will identify said designee in writing.

B.    A Hearing Officer will hear evidence in cases of major violations of departmental administrative regulations, and institutional rules and regulations, for which punishments or sanctions may be imposed.

C.    Sanctions or punishments may include, segregation, forfeiture of earned good time, custody review, and loss of privileges.

D.    When an inmate with a serious mental illness receives a disciplinary report, the inmate's mental status will be considered in determining the inmate's competency to participate in the hearing process. When an inmate is found incompetent, the disciplinary hearing process will be delayed until the inmate's competence has been restored. The inmate's mental status will be considered in the disposition when as inmate with a mental illness is found guilty of a rule violation. The institutional psychologist will assess the inmate's competency and culpability, and provide relevant information to the disciplinary hearing officer.

**EXHIBIT** ____I____

E.    Inmates will not be punished for symptoms of a serious mental illness. This is not to say that a mental health inmate should never receive a disciplinary. The intent of the mental status evaluation is to determine if the misconduct is symptomatic of the presence of a serious mental illness. If such is the case, disciplinary action is deemed counterproductive and should not be completed.

## II    DUE PROCESS REQUIREMENTS

Any inmate charged with a violation of departmental administrative regulations, institutional rules and regulations must be given a due process hearing if the violation can result in the loss of earned good time and/or confinement to segregation. An inmate can be placed in disciplinary segregation for up to 45 days and upon reclassification from work release for up to 30 days.

Due Process requirements are:

A.    The inmate must be given written notice of the charges at least 24 hours prior to the Hearing.

B.    The inmate must be permitted to attend the hearing and testify or present documentary evidence, unless he refuses to attend or is disruptive.

C.    The inmate must be permitted to call a reasonable number of reasonably available witnesses to the hearing, normally no more than three (3) witnesses.

D.    The inmate must be permitted to prepare and submit to the Hearing Officer, prior to the hearing, pertinent written questions to be asked of witnesses at the hearing, or to ask another inmate to assist him in preparing these questions if he is incapable of doing so.

E.    The inmate must be informed of the decision of the Hearing Officer, and must be given a copy of the signed and approved Disciplinary Report which lists the findings of fact, the basis for the findings of fact, the decision of the Hearing Officer, and the punishment or sanction imposed.

F.    If the inmate has been identified as a mental health inmate, an evaluation of the inmate's competency to understand the disciplinary process must be conducted by the institutional psychologist.

## III    PROCEDURE BEFORE HEARING

A.    Arrest or Charge of Inmate

The arrest or charge of an inmate for a rule violation may be made by any employee or contract medical employee of the ALDOC. The person making the arrest or charge is designated as the Arresting Officer. The Arresting Officer will appear as a witness at the Disciplinary Hearing. For the purpose of this regulation, an arrest is defined as the taking of an inmate into custody or

AR 403 January 30, 2003

making a charge by the authority of this regulation, federal law, Alabama law, or municipal law for the purpose of charging him/her with an offense or violation of a departmental administrative regulation or institutional rules and regulations or charges. The arrest should be made within ten (10) calendar days after the violation is reported, discovered, or within ten (10) calendar days after an investigation has been completed, or within ten (10) calendar days after an escapee (in an escape charge) is back in custody of the ALDOC.

B.    Appointment of Hearing Officer

Wardens will appoint a ALDOC employee to serve as Hearing Officer of any charge(s) brought against an inmate pursuant to AR 403. Wardens, personnel who have formed an opinion of the innocence or guilt of the charged inmate, Arresting Officer, and witnesses may not serve as Hearing Officer.

C.    Investigation of Charges

The Wardens may, if he/she deems it necessary or advisable, order an investigation of the charges at the institutional level and a report to him/her or request an investigation by the Investigations and Intelligence (I & I) Division.

D.    Preparation of Charges

ALDOC Form 225B, Disciplinary Report (Annex C) items 1-4 must be completed when the inmate is charged. If the inmate's actions in one incident violates various major or minor rules, then the Arresting Officer may use his/her discretion in which charges to bring. All offenses growing out of the same incident may be charged at the same time, using separate 225B forms for each charge. The charge(s) should be filed and served within ten (10) calendar days after the inmate is arrested or charged. If the charge is escape, the writer of the incident report will complete an incident report which will be notarized (See AR 302). It will include therein additional information such as contacts for evidence and testimony including law enforcement officers, free world witnesses, and ALDOC personnel.

E.    Serving the Inmate with the Charge

The Form 225B completed through item five must be served by the Serving Officer on the inmate at least 24 hours before the schedule hearing. The Serving Officer will read the charges to the inmate. If the inmate refuses to sign for receipt of charges, then the Serving Officer will so indicate by "Refused to Sign" and sign Serving Officer's signature. The Serving Officer at this time will inform the accused inmate that he/she should prepare his/her testimony, in the form of a written statement, to be read by the inmate to the Hearing Officer during the hearing. After the inmate has been served a copy of 225B, a suspense copy will be placed in the inmate's institutional file.

F.    Obtain Name of Witnesses Inmate wants at Hearing

AR 403 January 30, 2003

At the time of service of charges on an inmate, the Serving Officer will advise the inmate of his/her right to call witnesses whose testimony will be relevant and whose presence will not present a security threat. The Serving Officer will obtain those names at this time and will not refuse to list any witnesses desired by the inmate. The Hearing Officer will determine if the witnesses' testimony could possibly be relevant and/or if bringing certain witness (es) would present a security threat. Normally no more than three (3) witnesses with relevant testimony are called. The Hearing Officer will be responsible for having the inmates and employees called as witnesses present at the hearing. Any free world witness the inmate wishes to testify, and whose testimony would be relevant, must be written or called by the inmate, and permission must be given to the inmate to write or call. Form 225B, Items 6 and 7, are to be completed by the Serving Officer when serving the inmate. If an inmate requests more than three witnesses, including free world witnesses, the Hearing Officer, prior to the hearing, may require the inmate to submit a summary of the witnesses' expected testimony. The Hearing Officer may refuse to allow any witness whose testimony is not relevant to testify.

G.    Provide Data on Inmate to Hearing Officer

At institutions where computer input, printer capability, and personnel are available, on the working day prior to the Disciplinary Hearing, a copy of the inmate's record display, CDINC may be produced and provided to the Hearing Officer along with the inmate's good time earning status and good time earned.

## IV    PROCEDURES DURING HEARING

The Hearing should be held within ten (10) working days after the inmate has been served with the charge(s), but cannot be held in less than 24 hours. If there is a need to postpone or reschedule the hearing, Form 225D, Notice of Postponement of Disciplinary Hearing (Annex D) should be completed advising the inmate of the rescheduled date and reason for delay. The Hearing Officer at the time the hearing is to begin will follow these procedures:

A.    Have the inmate present in the hearing room and identify him/her as the inmate charged. The inmate must be present in the hearing room unless he/she refuses to attend the hearing or is disruptive. You may proceed without him/her only for these two (2) reasons. If he/she is not present, explain in detail on an additional page and attach to the disciplinary report.

B.    Read the charges to the inmate and determine if he/she understands the charges.

C.    Determine if the inmate is capable of acting in his/her own defense. If the inmate has been identified as a "mental health" inmate, review the disciplinary report to ascertain if an assessment of the inmate's mental status has been performed by the institutional psychologist. If an assessment has been done, and the inmate has been deemed capable of understanding the disciplinary process, then determine if the inmate is capable of acting in his/her own defense. If the inmate is not capable of acting in his/her own defense, then

AR 403 January 30, 2003

appoint an on-duty ALDOC employee to assist the inmate. If the inmate is provided assistance, the hearing may be delayed up to five (5) working days if requested. Neither inmates nor free world counsel may represent an inmate in a disciplinary hearing. Complete item 10 on Form 225B.

D.    Ask the inmate how he/she pleads and record on Form 225B. If inmate pleads guilty, then go forward to procedural Step L.

E.    Swear the inmate and all witnesses under oath to testify truthfully.

F.    Hear the evidence brought by the Arresting Officer and all witnesses present at the hearing. Affidavits and written statements should not be used in lieu of testimony, except in extreme circumstances, which must be documented on additional page(s) and attached to the disciplinary report.

G.    Allow the inmate to read his/her prepared written statement to the Hearing Officer and allow the inmate to add his/her oral testimony if the inmate desires.

H.    Ask the questions, if relevant, prepared by the inmate, to the respective witness (es) and write the answers.

I.    Explain to the inmate why any witness (es) he/she has requested were not called and complete item 16 on Form 225B.

J.    Dismiss everyone from the hearing room, consider the evidence and make a finding of fact and finding of not guilty or guilty and determine the punishment or sanctions imposed. The Hearing Officer may determine that the violation charged has not been proven but that a lesser included similar offense has been proven. A lesser included violation is defined as being a violation in which some but not all of the elements of proof of the originally charged violations are present. With good justification the Hearing Officer has authority to find the inmate guilty of a lesser included offense, in which case, provisions of AR 414 may apply in order to complete disposition of appropriate disciplinary action.

K.    Call the inmate into the hearing room and inform him/her of the decisions reached.

L.    If the inmate has pled guilty, then omit procedures E through K, swear in the inmate only, require the inmate to explain the details of his/her violation to you, have the inmate sign the guilty plea, and then, make a finding of fact, and a finding of guilt or innocence. If the inmate's plea of guilty is accepted then inform him/her of the punishment or sanctions imposed. If the inmate refuses to sign the guilty plea this will be considered a "Not Guilty" plea and proceed with the hearing.

## V    PROCEDURES AFTER HEARING

The Hearing Officer, after the hearing will follow these procedures:

AR 403 January 30, 2003

A.  Have a condensed version of all pertinent testimony typed on Form 225B using additional pages if necessary.

B.  Complete all spaces on Form 225B or put [N/A] (Not Applicable) in those appropriate spaces.

C.  Complete, in the appropriate space, specifically the findings of fact made by the Hearing Officer.

D.  Complete, in the appropriate space, specifically the basis for the findings of fact.

E.  Obtain all necessary signatures on the Disciplinary Report Form 225B.

F.  The Warden or his/her designee will approve or disapprove the findings and/or recommendations within ten (10) working days after hearing. The Warden may not disapprove a finding of "not guilty". If the Warden disapproves of the recommended punishment, he/she may order the punishment to be reduced.

G.  A completed signed copy of the disciplinary report will be served on the inmate as soon as possible without undue delay after the Warden's determination, and all approved punishments will begin at this time or at the time the inmate is placed in the segregation cell to begin serving disciplinary segregation. If the Warden determines that a security threat will exist by a delay in the imposition of punishment, he/she may order such punishment to begin at any time after the hearing is conducted.

H.  If the Warden approves the recommendation of the Hearing Officer, or a lesser punishment, he/she will:

   1.  At units with computer terminal input capability: Coordinate with and forward or issue his/her comments and supporting documents to the institutional Social Service Coordinator. The Coordinator will insure the terminal operator takes the required action to effect the loss of good time in accordance with the Computer Terminal Operator's Manual, and implement classification procedures or other considerations. Institutional Social Services will forward/issue the completed and signed disciplinary report to the following:

      a.  One copy to the Board of Pardons and Parole.

      b.  One copy to the Director of Investigations and Intelligence in all cases where there has been a violation of Federal or State law.

      c.  Original to the Director of Central Records, stamped as "Entered" at the terminal, initialed by the operator, and dated on the date of entry.

      d.  One copy retained in the inmate's institutional file.

AR 403 January 30, 2003

2.  At units without computer terminal capability: Submit his/her comments and supporting documents to the Director of Central Records for any further action needed to effect the loss of good time or other consideration. The Director of Central Records will accept the action of the Warden for less severe punishment as final. Additionally, units without computer terminal capability, will furnish one copy to the Board of Pardons and Paroles, and one copy to the Director of Investigations and Intelligence in all cases where there has been a violation of federal or state law. The original will be retained in the inmate's Central Record file. The Warden will notify the inmate in writing of his/her approval or recommended disapproval, and one copy of the Warden's action will be forwarded to Social Services for classification purposes and the same copy retained in the inmate's institutional file.

## VI    MISCELLANEOUS PROVISIONS

A.  Arrest and Hearing Based on Information From Confidential Sources

If the arrest of an inmate is made upon information received from confidential source(s), the following procedures should be followed:

1.  The identity of a confidential source(s) of information will remain confidential. Precautions must be taken to insure the reliability of any information received from a confidential source(s).

2.  The facts obtained from confidential source(s) will be presented verbally at the hearing by the person receiving the information from the confidential source.

3.  No decision in a disciplinary proceeding may be based upon information from an undisclosed informant unless there is corroborating information or evidence or unless the reliability of the source satisfies the Hearing Officer that the information is true. The basis for accepting the source as reliable should be indicated in item 18 on Form 225B.

B.  Excusing Witnesses Called by Inmate

As the names of witnesses desired by the accused have been obtained during the notification and serving process, they (witnesses) are required to appear, unless excluded for specific reasons by the Hearing Officer. Reasons for not calling a witness may include, but are not limited to: inmate witness declining to appear voluntarily; the witness being repetitive in that such witness is expected to provide the same information as other witnesses; the witness not having personal knowledge of the circumstances of the incident; endangering the security of the institution; or an existing possibility of retribution which could harm an individual. The reason (s) for not calling any witness requested by an inmate will be explained to the inmate and item 16 on the Form 225B must be completed.

C.  Determine if the Inmate is capable of acting in his/her own defense. If the inmate has been identified as a "mental health" inmate, review the disciplinary report to ascertain if an assessment of the inmate's mental status has been performed by the institutional

AR 403 January 30, 2003

psychologist. If an assessment has been done, and the inmate has been deemed capable of understanding the disciplinary process, then determine if the inmate is capable of acting in his/her own defense. If the inmate is not capable of acting in his/her own defense, then appoint an on-duty ALDOC employee to assist the inmate. If the inmate is provided assistance, the hearing may be delayed up to five (5) working days, if requested. Neither other inmate's nor free-world counsel may represent an inmate in a disciplinary hearing. Complete item 10 on the Form 225B. In any case where a disciplinary or rule violation has been voided or otherwise overturned as a result of a technicality or due process violation, but where the behavior indicates the need for a more restrictive placement or custody, classification and/or the Central Review Board may classify the offender as deemed appropriate based upon the specific act or behavior itself.

D.    Adjudication – A major violation may be adjudicated with a behavioral citation in accordance with AR 414 provided the following conditions are met:

1.    There is no injury to staff during the incident or as a result of the violation.

2.    No consequences arise which result in the loss or destruction of property and security of the institution.

3.    There is no serious injury to inmates as a result of the violation or incident.

4.    The violator is not likely to receive disciplinary segregation.

5.    With written justification any combination of the Citing Officer, Receiving Supervisor, or the Warden or his/her designee, determines that a behavioral citation is appropriate due to circumstances of the incident or violation.

E.    For mental health inmates deemed competent to participate in the disciplinary process, the disciplinary hearing officer will consider the mental health evaluation and any pertinent recommendations prior to determining the inmate's guilt or innocence in making a disposition of the case. The institutional psychologist will be contacted for clarification, if the hearing officer has questions about recommendations. If the inmate is found guilty, the hearing officer may impose punishment and/or refer the inmate for treatment.

F.    The disciplinary process will not proceed for an inmate deemed incompetent. The process will be suspended until the inmate has been restored to competency. The institutional psychologist will advise the disciplinary hearing officer when the inmate has been restored to competency, and the disciplinary hearing process can proceed. If the inmate has not been restored to competency within six months, information regarding the rule violation and the inmate's inability to proceed with the disciplinary hearing will be documented in an incident report. The incident report will be filed in the inmate's institutional file. The disciplinary report will be removed from the file and no further action will be taken.

G.    Referral for a mental health consultation to the disciplinary process may be made: 1) at the time of the rule violation, 2) when review of the disciplinary report identifies the inmate as

AR 403 January 30, 2003

having a serious mental illness, or 3) whenever an inmate not previously identified as having a serious mental illness demonstrates signs of compromised functioning during the hearing process.

## VII    SANCTIONS

A.    Annex A, Violations Table and Authorized Sanctions, contains a table listing by violation number and the violation type and sanctions. Annex B, Definitions and Examples of Rule Violations, contains definitions and examples of the violations listed in Annex A.

B.    Inmates removed from programs for conviction of a new crime will be permanently removed from eligibility for correctional incentive time by placement in Class IV CIT status permanently (See Administrative Regulation 427 and 432).

C.    Approved actions by the Warden or his/her designee is final and the sanctions will begin on the effective date shown on the charges.

## VIII    STANDARD OPERATING PROCEDURES

Institutions may prepare a Standard Operating Procedure (SOP) to ensure compliance with provisions of this regulation.

## IX    APPEAL OF THE INMATE

The inmate may not appeal the final action by the Warden or his/her designee.

## X    REFERENCE

Administrative Regulation 414, "Behavior Citation Procedures for Informal Disciplinary Actions"

## XI    SUPERSESSION

This regulation supersedes Administrative Regulation 403, dated October 3, 1996.


_Donal Campbell_
Donal Campbell, Commissioner

## ANNEXES

Annex A - Violations Table and Authorized Sanctions

Annex B - Definitions and Examples of Rule Violations

AR 403 January 30, 2003

Annex C - ALDOC Disciplinary Report (ALDOC Form 225B)

Annex D - Notice of Postponement of Disciplinary Hearing (ALDOC Form 225D)

## ALABAMA DEPARTMENT OF CORRECTIONS
## VIOLATIONS TABLE AND AUTHORIZED SANCTIONS
## ANNEX A

### VIOLATION AGAINST PERSONS

| MAJOR RULE VIOLATION | VIOLATION TYPE |
|---|---|
| 28 | HOMICIDE |
| 29 | ASSAULT ON PERSON(S) ASSOCIATED WITH THE ALDOC |
| 30 | ASSAULT ON PERSON(S) NOT ASSOCIATED WITH ALDOC |
| 31 | ASSAULT ON ANOTHER INMATE |
| 32 | SEIZING OR HOLDING HOSTAGES |
| 33 | UNLAWFULLY DETAINING ANY PERSONS |
| 34 | FIGHTING WITH A WEAPON |
| 35 | FIGHTING WITHOUT A WEAPON |
| 36 | SEXUAL ASSAULT (FORCIBLE) |
| 37 | SEXUAL OFFENSE (NON-FORCIBLE)/SOLICITING |
| 38 | INDECENT EXPOSURE/EXHIBITION |
| 39 | EXTORTION OR BLACKMAIL |
| 40 | ROBBERY |
| 41 | MAKING FALSE STATEMENT OR CHARGE TO A ALDOC EMPLOYEE WITH INTENT TO DECEIVE THE EMPLOYEE OR TO PREJUDICE ANOTHER PERSON |
| 42 | GATHERING AROUND AN EMPLOYEE IN A THREATENING OR INTIMIDATING MANNER |
| 44 | THREATS |

AR 403 January 30, 2003

## SECURITY VIOLATION

MAJOR RULE VIOLATION                    VIOLATION TYPE

45                          ESCAPE BY FORCE

**ALABAMA DEPARTMENT OF CORRECTIONS**
**VIOLATIONS TABLE AND AUTHORIZED SANCTIONS**
**ANNEX A (Continued)**

46                          ATTEMPT TO ESCAPE BY FORCE

47                          ESCAPE WITHOUT FORCE

48                          ATTEMPT TO ESCAPE WITHOUT FORCE

49                          ABSENT WITHOUT LEAVE

50                          BEING IN AN UNAUTHORIZED AREA

51                          UNAUTHORIZED POSSESSION OF ESCAPE DEVICE

52                          UNAUTHORIZED POSSESSION OF WEAPON OR
                            DEVICE THAT COULD BE USED AS A WEAPON

53                          INCITING TO RIOT OR RIOTING

54                          REFUSING TO WORK/FAILING TO CHECK OUT FOR
                            WORK/ENCOURAGING OR CAUSING OTHERS TO
                            STOP WORK

56                          FAILURE TO OBEY A DIRECT ORDER OF ALDOC
                            OFFICIAL

57                          INSUBORDINATION

59                          DELAYING, HINDERING, OR INTERFERING WITH
                            AN EMPLOYEE IN PERFORMANCE OF HIS/HER
                            DUTY

60                          BRIBERY OR ATTEMPTED BRIBERY

61                          DISRUPTING THE COUNT

62                          INTENTIONALLY CREATING A SECURITY, SAFETY,
                            OR HEALTH HAZARD

63                          DISORDERLY CONDUCT

| 64 | POSSESSION OF CONTRABAND. INCLUDES POSSESSION OF CURRENCY UNLESS APPROVED BY THE WARDEN |
|---|---|
| 65 | POSSESSION OF UNAUTHORIZED OR UNPRESCRIBED DRUGS, INTOXICANTS, OR |

Annex A to AR 403 (page 2 of 4)

## ALABAMA DEPARTMENT OF CORRECTIONS
## VIOLATIONS TABLE AND AUTHORIZED SANCTIONS
## ANNEX A (Continued)

|  | PARAPHERNALIA. ALSO, CONSUMPTION OR USE OF, OR UNDER THE INFLUENCE OF ALCOHOL, NARCOTICS, OR OTHER INTOXICANTS. |
|---|---|

### PROPERTY VIOLATIONS

| MAJOR RULE VIOLATION | VIOLATION TYPE |
|---|---|
| 68 | THEFT, DAMAGE, OR DESTRUCTION OF ANOTHER'S PERSONAL PROPERTY |
| 69 | DESTROYING, STEALING, DISPOSING, ALTERING, DAMAGING, OR SELLING STATE PROPERTY |
| 70 | UNAUTHORIZED POSSESSION OF OTHER'S PROPERTY |
| 71 | ARSON |
| 72 | FORGERY |
| 73 | COUNTERFEITING |

### POLICY VIOLATIONS

| MAJOR RULE VIOLATION | VIOLATION TYPE |
|---|---|
| 78 | FAILURE TO COMPLY WITH THE AGREEMENT AND CONDITIONS OF LEAVE AND PASS |
| 86 | BEING FIRED FROM JOB |

### PERSONAL VIOLATIONS

| MAJOR RULE VIOLATION | VIOLATION TYPE |
|---|---|
| 90 | CONSUMPTION OR USE OF, OR UNDER THE INFLUENCE OF ALCOHOL, NARCOTICS OR OTHER INTOXICANTS |

AR 403 January 30, 2003

## MISCELLANEOUS VIOLATIONS

| MAJOR RULE VIOLATION | VIOLATION TYPE |
|---|---|
| 91 | CONSPIRACY TO COMMIT A VIOLATION OF DEPARTMENTAL OR INSTITUTIONAL RULES |

Annex A to AR 403 (page 3 of 4)

**ALABAMA DEPARTMENT OF CORRECTIONS**
**VIOLATIONS TABLE AND AUTHORIZED SANCTIONS**
**ANNEX A (Continued)**

| | |
|---|---|
| 92 | AIDING AND ABETTING ANOTHER TO COMMIT A VIOLATION OF DEPARTMENTAL OR INSTITUTIONAL RULES |
| 93 | VIOLATION OF STATE OR FEDERAL LAW |
| 94 | SOLICITING SEXUAL ACT |
| PV | VIOLATION OF PAROLE (RECOMMENDED BY P&P) |

## WORK RELEASE AND SIR VIOLATIONS

| MAJOR RULE VIOLATION | VIOLATION TYPE |
|---|---|
| E8 | VIOLATION OF SIR CONTRACT |
| E9 | ABSCONDING FROM SUPERVISION, ABSENT WITHOUT PERMISSION |

NOTE:    Inmates are subject to all Rule Violations (28 thru E9). Rules E1 through E3 (see AR 414) and E8 and E9 (this regulation) are designed primarily to manage/govern behavior of inmates. In addition to punishments authorized for major violations outlined in this Annex, inmates who violate, and are convicted of, any of these rules (28 thru E9) may also be removed from the Work Release or SIR Program.

## AUTHORIZED SANCTIONS

1.    Loss of a portion or all good time the inmate has earned.

2.    Confinement to Segregation.

3.    Recommend custody review.

4.    Loss of any and all privileges up to 90 days.

AR 403 January 30, 2003

Annex A to AR 403 (Page 4 of 4)

## ALABAMA DEPARTMENT OF CORRECTIONS
## DEFINITIONS AND EXAMPLES OF RULE VIOLATIONS
## ANNEX B

### VIOLATION AGAINST PERSONS

28    HOMICIDE - The death of a human being caused by another person's actions.

29    ASSAULT ON A PERSON (S) ASSOCIATED WITH THE ALDOC- Any willful attempt or threat to inflict injury upon an officer of ALDOC, employee, or other person associated with the ALDOC giving the victim reason to fear or expect immediate bodily harm.

30    ASSAULT ON A PERSON (S) NOT ASSOCIATED WITH ALDOC - See #29 above.

31    ASSAULT ON ANOTHER INMATE - See #28 or #29 above.

32    SEIZING OR HOLDING HOSTAGES IN ANY MANNER - Abducting any individual with the intent to hold him/her for ransom or reward, to use him/her as a shield, or to use him/her as an aid in the commission of a felony or escape.

33    UNLAWFULLY DETAINING ANY PERSON - Holding any person against his/her will, even though the intent to create a hostage situation was not present.

34    FIGHTING WITH A WEAPON - Two or more individuals engaging in a mutual combat with a weapon(s) or a device(s) used as a weapon(s) during which combat the principal aggressor cannot be determined.

35    FIGHTING WITHOUT A WEAPON - Similar to #34 above except that a weapon or device used as a weapon are not present.

36    SEXUAL ASSAULT (FORCIBLE) - See #29 above; assault with the intention to commit the crime of rape or other sexual offense.

37    SEXUAL OFFENSE (NON-FORCIBLE)/SOLICITING - Commission of any sexual act during which both participants act willingly. To include hugging, fondling, caressing, kissing, etc.

38    INDECENT EXPOSURE/EXHIBITIONISM - Exposure to sight of the private parts of the body in a lewd or indecent manner.

39    EXTORTION OR BLACKMAIL - Demanding or attempting to demand, or receiving money or anything of value in return for protection from others in order to avoid bodily harm, or under threat of any kind.

40    ROBBERY - The taking of property from another by the use of force, or the threat of the use of force with the intent to deprive that individual of the property.

AR 403 January 30, 2003

41  MAKING FALSE STATEMENTS OR CHARGES –The speaking of slanderous, defamatory, or untrue words tending to prejudice another.

42  GATHERING IN A THREATENING OR INTIMIDATING MANNER - Self-explanatory.

Annex B to AR 403 (Page 1 of 4)

**ALABAMA DEPARTMENT OF CORRECTIONS**
**DEFINITIONS AND EXAMPLES OF RULE VIOLATIONS**
**ANNEX B (Continued)**

44  THREATS - A communicated intent to do bodily harm to another individual or group by verbal or written expression.

## SECURITY VIOLATIONS

45  ESCAPE BY FORCE - The departure out of the custody of the ALDOC or other legal agency by a lawfully detained inmate with the intent to avoid confinement by use of constraining power, compulsion, or force.

46  ATTEMPT TO ESCAPE BY FORCE - An endeavor to escape or conspire to escape by force (see #45 above) resulting in recapture prior to leaving state custody or other controlling agency.

47  ESCAPE WITHOUT FORCE - See #45 above, except that there is no use of constraining power, compulsion, or force involved.

48  ATTEMPT TO ESCAPE (WITHOUT FORCE) - See #46 above, except that there is no use of constraining power, compulsion, or force involved.

49  ABSENT WITHOUT LEAVE - Not returning from leave or pass within two hours of the designated time.

50  BEING IN AN UNAUTHORIZED AREA - Also includes being ardent from assigned work area or place of employment and/or being absent from assigned quarters without permission.

51  UNAUTHORIZED POSSESSION OF ESCAPE DEVICE - Having in one's possession any device which could be used to attempt or effect an escape, such as, but not limited to, an instrument to pick a lock, a homemade key, a disguise, or a replica of a human being.

52  UNAUTHORIZED POSSESSION OF A WEAPON OR DEVICE THAT COULD BE USED AS A WEAPON - Any instrument which could be used in a violent manner, such as a device with a pointed and/or sharpened end, or a homemade club, or any item which appears to be a weapon.

53  INCITING TO RIOT OR RIOTING - To incite a riot is to solicit or urge other persons by speech or actions to engage in a conduct which would create a substantial risk to institutional security or public safety, whereas rioting is the action of five or more people engaging in such behavior.

54  REFUSING TO WORK/FAILURE TO CHECK OUT FOR WORK/ENCOURAGING OR CAUSING OTHERS TO STOP WORK - Self-explanatory.

AR 403 January 30, 2003

56    <u>FAILURE TO OBEY A DIRECT ORDER OF A ALDOC OFFICIAL</u> - Not complying with an order issued by an ALDOC employee in the performance of duty.

57    <u>INSUBORDINATION</u> - Any act, gesture, remark or statement which obviously reflects disrespect to lawful authority.

Annex B to AR 403 (Page 2 of 4)

**ALABAMA DEPARTMENT OF CORRECTIONS**
**DEFINITIONS AND EXAMPLES OF RULE VIOLATIONS**
**ANNEX B (Continued)**

59    <u>DELAYING, HINDERING, OR INTERFERING WITH AN EMPLOYEE IN PERFORMANCE OF HIS DUTY</u> - Self-explanatory.

60    <u>BRIBERY OR ATTEMPTED BRIBERY</u> - Offering or conferring upon a public servant anything of value with the intent to affect or influence official action, or receiving anything of value for such a purpose.

61    <u>DISRUPTING THE COUNT</u> - Any action intended to which otherwise effects a miscount of inmates within the institution.

62    <u>INTENTIONALLY CREATING A SECURITY, SAFETY OR HEALTH HAZARD</u> – Creating a situation which could cause serious impairment to the operation of        the institution, harm to individuals, or result in destruction of property.

63    <u>DISORDERLY CONDUCT</u> – Conduct or actions that would create risk, inconvenience, or alarm to normal institutional/facility security or routine operation.

64    <u>POSSESSION OF CONTRABAND</u> - The possession of any item not issued to the inmate by an ALDOC employee, sold in the Canteen Store or approved by the Warden, to include possession of U.S. currency in any amount, or items in excessive amounts.

65    <u>POSSESSION OF UNAUTHORIZED OR UNPRESCRIBED DRUGS, INTOXICANTS, OR PARAPHERNALIA</u> – To include anything used in the administration of drugs or for the manufacture of drugs: for example, a paper bag with traces of glue inside, or the ingredients to make home brew or an intoxicating substance, or storage by the inmate or possession by the inmate of any psychotropic medication unless a specific exception is made by the prescribing physician (the inmate must keep a copy of the physician's authorization with medication at all times).

**PROPERTY VIOLATIONS**

68    <u>THEFT, DAMAGE OR DESTRUCTION OF ANOTHER'S PERSONAL PROPERTY</u> – The taking of the property of another person without threat, force, or coercion, with the intent to permanently deprive the owner of the property.

69    <u>DESTROYING, STEALING, DISPOSING, ALTERING, DAMAGING, OR SELLING STATE PROPERTY</u> - Self-explanatory.

70    <u>UNAUTHORIZED POSSESSION OF OTHER'S PROPERTY</u> - Self-explanatory.

AR 403 January 30, 2003

71   ARSON - The malicious burning, either by fire or explosion, of state property or items belonging to the inmate or another person.

72   FORGERY - The altering, possession, or transfer of a written instrument or document with the intent to defraud or deceive.

Annex B to AR 403 (Page 3 of 4)

**ALABAMA DEPARTMENT OF CORRECTIONS**
**DEFINITIONS AND EXAMPLES OF RULE VIOLATIONS**
**ANNEX B (Continued)**

73   COUNTERFEITING - To copy or imitate, without authority, in order to deceive or defraud by passing the copy as the original; for example, altering postage stamps, money orders or other documents.

**POLICY VIOLATIONS**

78   FAILURE TO COMPLY WITH THE AGREEMENT AND CONDITIONS OF LEAVE OR PASS - To include travel arrangements of the leave or pass plan.

86   BEING FIRED FROM A JOB - Being released from employment, or assigned job, because of sloppy work, insolent language, or other culpable behavior on the part of the inmate.

**PERSONAL VIOLATIONS**

90   CONSUMPTION OR USE OF, OR UNDER THE INFLUENCE OF ALCOHOL, NARCOTICS OR OTHER INTOXICANTS - The use of unauthorized narcotic substance or other intoxicant by sniffing, injection, or orally ingesting.

**MISCELLANEOUS VIOLATIONS**

91   CONSPIRACY TO COMMIT A VIOLATION OF DEPARTMENTAL OR INSTITUTIONAL RULES - A combination or confederacy between two or more inmates **or** one or more inmates and one or more free world persons for the purpose of violating same departmental or institutional rule, even though the act is not consummated or carried out.

92   AIDING AND ABETTING ANOTHER TO COMMIT A VIOLATION OF DEPARTMENTAL OR INSTITUTIONAL RULES - To help, assist or facilitate the violation of a departmental or institutional rule by encouragement of counsel as to its commission with words, acts, support, presence, or assistance rendered.

93   VIOLATION OF STATE OR FEDERAL STATUTE - Self-explanatory.

94   SOLICITING SEXUAL ACT - Self-explanatory.

PV   VIOLATION OF PAROLE - Violation to be determined by Pardons and Paroles Officer/Board.

**WORK RELEASE AND SIR VIOLATIONS**

E8   VIOLATION OF SIR CONTRACT – Self-explanatory

E9   ABSCONDING FROM SUPERVISION, ABSENT WITHOUT PERMISSION – Self-explanatory

AR 403 January 30, 2003

ALDOC Form 225B

Annex B to AR 403 (Page 4 of 4)

## ALABAMA DEPARTMENT OF CORRECTIONS
## DISCIPLINARY REPORT

1.    Inmate: _____    Custody: _____    AIS _____

2.    Facility: _____

3.    The above inmate is being charged by _____ with a violation of Rule
      Number _____ specifically _____ from regulation # _____ which
      occurred on or about _____, 20 _____ at (time) _____ (am/pm), Location:
      _____. A hearing on this charge will be held after 24 hours from
      service.

4.    Circumstances of the violation(s) are as follows: _____

      _____

      _____

      _____                          _____
              Date                                    Arresting Officer/Signature/Rank

5.    I hereby certify that I have personally served a copy of the foregoing upon the above named inmate and I
      informed inmate of his/her right to present a written or oral statement at the hearing and to present
      written questions for the witnesses on this the _____ day of _____ 20 _____ , at (time)_____
      (am/pm).

      _____                          _____
      Serving Officer/Signature/Rank                  Inmate's Signature/AIS Number

6.    Witnesses desired? NO_____         YES_____
                          Inmate's Signature              Inmate's Signature

7.    If yes, list _____

      _____

8.    Hearing Date_____ Time _____ Place _____

9.    Inmate must be present in Hearing Room. If he/she is not present explain in detail on a additional page and
      attach.

10.   A finding is made that inmate (is/is not) capable of representing him/herself.

                          _____
                                Page 18 of 23

AR 403 January 30, 2003

Signature/Hearing Officer

11.    Plea: _____ Not Guilty _____ Guilty

12.    The Arresting Officer, inmate, and all witnesses were sworn to tell the truth.

—————————————————
Signature/Hearing Officer

Annex C to AR 403 (Page 1 of 5)

13.    Arresting Officers testimony (at the hearing): _____

_____

_____

_____

14.    Inmate's Testimony: _____

_____

_____

_____

Witness: _____     Substance of Testimony:_____

_____

_____

Witness: _____     Substance of Testimony:_____

_____

_____

Witness: _____     Substance of Testimony:_____

_____

_____

15.    The inmate was allowed to submit written questions to all witnesses. Copy of questions and answers are attached.

—————————————————————————————
Signature/Hearing Officer

16.    The following witnesses were not called - Reason not called

Page 19 of 23

AR 403 January 30, 2003

1. _____  _____

2. _____  _____

3. _____  _____

17.  After hearing all testimony, the Hearing Officer makes the following findings of fact: (Be Specific) the Hearing Officer finds that:

_____

_____

_____

_____

18.  Basis for Findings of Fact: _____

_____

_____

_____

19.  Hearing Officer's Decision: _____ Guilty _____ Not Guilty

20.  Recommendation of Hearing Officer: _____

_____

_____

_____
Signature/Hearing Officer

_____
Type Name and Title

21.  Warden's Action – Date _____

Approved _____

Disapproved _____

Other (Specify) _____

_____

22.  Reason if more than 30 calendar days delay in action._____

AR 403 January 30, 2003

23. I hereby certify that a completed copy of the foregoing Disciplinary Report was served on the above named inmate on this _____ day of _____ 20___ , at time)_____(am/pm).

_____          _____
Signature/Serving Officer/Title              Inmate's Signature/AIS Number

**ALABAMA DEPARTMENT OF CORRECTIONS**              Annex C to AR 403 (Page 3 of 5)
**DISCIPLINARY REPORT (OPTIONAL)**

Inmate Name/AIS Number _____          Incident Report No._____

Facility _____

CONTINUED ARRESTING OFFICER'S (AO) STATEMENT AND/OR QUESTIONS BY HEARING OFFICER (QBHO) TO ARRESTING OFFICER: _____

_____

_____

_____

_____

CONTINUED INMATE'S STATEMENT AND/OR QUESTIONS BY HEARING OFFICER (QBHO) TO INMATE:_____

_____

_____

_____

_____

CONTINUED WITNESS TESTIMONY (QBHO):_____

_____

_____

_____

_____

CONTINUED FINDINGS OF FACT:_____

_____

_____

_____

AR 403 January 30, 2003

_____

_____

CONTINUED BASIS FOR FINDINGS OF FACT: _____

Annex C to AR 403 (Page 4 of 5)

_____

_____

_____

_____

CONTINUED HEARING OFFICER'S RECOMMENDATIONS: _____

_____

_____

_____

OTHER: _____

_____

_____

_____

_____

AR 403 January 30, 2003

Annex C to AR 403 (Page 5 of 5)

ALDOC Form 225D

## ALABAMA DEPARTMENT OF CORRECTIONS
## NOTICE OF POSTPONEMENT OF DISCIPLINARY HEARING

Inmate's Name _____ AIS # _____

Violation(s) _____

Notice is hereby given that your Disciplinary hearing which was scheduled on _____ has been rescheduled for _____

Reason for rescheduling: _____

_____

_____          _____
Inmate's Signature                              Serving Officer's Signature

## ALABAMA DEPARTMENT OF CORRECTIONS
## NOTICE OF POSTPONEMENT OF DISCIPLINARY HEARING

Inmate's Name _____ AIS # _____

Violation (s) _____

Notice is hereby given that your Disciplinary hearing which was scheduled on _____ has been rescheduled for _____

Reason for rescheduling: _____

_____

_____          _____
Inmate's Signature                              Serving Officer's Signature

Annex D to AR 403

AR 403 January 30, 2003



**State of Alabama**
Alabama Department of Corrections



Research and Planning
P. O. Box 301501
Montgomery, AL 36130-1501

**Bob Riley**
GOVERNOR

**Donal Campbell**
COMMISSIONER

January 7, 2003

ADMINISTRATIVE REGULATION                OPR: INSTITUTIONS
NUMBER                    433

**Administrative Segregation and Housing for Close or Maximum Custody**

I      **GENERAL**

The purpose of this regulation is to establish policies and procedures governing the placement and maintenance of inmates in administrative segregation and close or maximum custody.

II     **POLICY**

A.     Administrative Segregation is defined as the placement of an inmate into a confinement area within a correctional facility which removes him/her from exposure and direct contact with the general population of the correctional facility.

B.     An inmate may be placed in administrative segregation in the following types of circumstances:

1.     The Institutional Classification Committee, the Warden or Warden's designee, or the Shift Supervisor may, in an emergency, place an inmate whose continued presence in the general population may pose a serious threat to property, self, staff, other inmates, or to the security or orderly operation of the institution, in administrative segregation.

2.     An inmate may be placed in a single/double segregation cell (depending on circumstances) pending completion of an investigation or a due process hearing. Such administrative segregation maybe used when necessary to ensure the safety of the inmate or the security of the institution. Documentation must be provided as to the reason for administrative segregation. The Warden or Warden's designee will ensure that no inmate

**EXHIBIT  J**

remains in administrative segregation status longer than necessary. An inmate's administrative segregation status should be reviewed by the Warden or Warden's designee within 72 hours, excluding weekends and holidays.

3. Any inmate whose assigned custody is either close or maximum will be housed in a single cell. Requirements for admission (Section III, Paragraph B) will have been satisfied by the prescribed classification procedures using classification manual criteria governing these custody assignments. Because these inmates pose a more serious risk to the safety, security and orderly operation of the institution, they may not be afforded privileges granted to inmates in less restricted custody status who are placed in administrative segregation.

4. Inmates serving a sentence of Life Without Parole and who have not yet been classified or who have been initially classified but have not moved to their institution of permanent assignment, and/or who have not completed the initial requisite period of time in close custody since their reception at the Receiving and Classification Center (RCC) at Kilby Correctional Facility and Tutwiler Prison for Women, will be housed in a single cell.

5. Life Without Parole inmates at RCC who are in transit between institutional assignments or who are at RCC (Kilby) for court or medical treatment may, at the discretion of the Warden, be housed in population if they are otherwise eligible.

## III    ADMISSIONS PROCEDURES

A. The Institutional Classification Committee, the Warden or Warden's designee, or the Shift Supervisor may order immediate administrative segregation when it is necessary for the security of the institution or to protect the inmate or others. The Warden or Classification Committee, depending upon the reason for administrative segregation, within 72 hours, excluding weekends and holidays, should review this action.

B. Inmates who are to remain in administrative segregation (with the exception of those covered under Section II, paragraph B. 3., 4. and 5. above) must be classified for that status by normal initial classification or progress review procedures as outlined in the official Alabama Department of Corrections (ALDOC) Classification Manual. No due process hearing will be required.

## IV    OPERATIONS

A. Staffing

AR 433 – January 7, 2003

1.  All staff members who work with inmates in administrative segregation will have completed their Correctional Officer I probationary period, except in extenuating circumstances. Ineffective staff members will be promptly and properly removed from administrative segregation units and will be placed in a more suitable institutional assignment with or without adverse personnel action, depending on the circumstances. The need for rotation of officers will be determined by the Warden.

2.  Staff members operating segregation units will maintain a permanent log, which will include all activity of the unit.

3.  A nurse will tour the administrative segregation units three times each day for the purpose of dispensing medication and observing the inmate's physical conditions.

4.  Institutional medical doctors will make examinations upon request from the nurse.

5.  Dental Care will be afforded as necessary.

6.  A mental health professional will visit the inmate during rounds made twice weekly. Visits will be separated by not less than one day. Example: Visits on Monday and Thursday's.

B.  In-Processing

1.  Property

    a.  The receiving institution will be responsible for conducting a shakedown of all inmates being processed into administrative segregation. All items not authorized in administrative segregation either by administrative regulations or by institutional Standard Operating Procedures (SOP) will be considered contraband and confiscated. Unauthorized personal items will be confiscated and listed on a property sheet and allowed to be sent home (4 copies) (inmate, property, inmate file, segregation file). Contraband items considered illegal, i.e. (gambling paraphernalia, drugs, weapons) will be placed in the I & I box or destroyed as appropriate.

    b.  Property will be stored and accounted for by the receiving institution for a period of thirty (30) days. Inmates who have personal property confiscated as contraband will be allowed to ship such items, at their expense to family, friends, etc... within thirty (30) days from the date confiscated. The ALDOC shall not be responsible for the cost of shipping these items. (Family, friends, etc...who are inmates within the prison system will not be allowed to receive the above property.)

AR 433 – January 7, 2003

c.   Inmates in administrative segregation **will** **not** be permitted television, **no exceptions**.

d.   Inmates who are placed in administrative segregation who have been authorized, while housed in general population, to subscribe and receive personal newspapers and/or magazines, will be allowed to receive only four (4) newspapers or four (4) magazines or a combination of newspapers and magazines equal to four (4). The inmates will have the opportunity and responsibility within the first thirty (30) days of their stay in administrative segregation to cancel any such subscriptions that exceed the allowed four (4). Any newspapers or magazines received after this 30-day period that exceeds the allowed four (4) combination will be disposed of by the administration as contraband.

e.   Newspapers that are seven (7) days out of date and magazines that are thirty (30) days or more out of date will be unauthorized, confiscated and destroyed.

f.   DOC Form N916 (Administrative Segregation Green Card) will be completed and made visible at cell entrance.

2.   Cell Condition Checklist

1.   A cell condition checklist will be filled out (lights, plumbing, etc.) and signed by the officer present and the inmate being assigned to and from the cell. Any time any inmate's cell is changed, a new checklist will be completed. Inmates who destroy part of or all of their cell may remain in that cell, provided no safety or security problems exist, and may be charged with the appropriate disciplinary violations.

2.   At the time they enter the administrative segregation unit, inmates will be given a verbal and written orientation concerning policies and procedures of the unit. The orientation process for each inmate will be documented.

C.   Living Conditions

1.   Healthy Environment – A healthy environment for inmates is required and will include, a minimum, the following:

a.   Clean and orderly surroundings
b.   Toilet facilities, sink with hot and cold water
c.   Lighting, ventilation and heating
d.   Compliance with all state and federal fire and safety regulations
e.   A wholesome diet
f.   Clean and fitted seasonable clothing

AR 433 – January 7, 2003

g.   Beds constructed off of the floor
h.   Access to bathing and exercise area

2.   Personal Hygiene

   a.   Administrative Segregation inmates will be provided basic needs for personal hygiene. Administrative Segregation inmates will be clothed like other inmates. If it is determined by a security supervisor or a medical/mental health professional, that there is eminent danger that an inmate will destroy an item or use it to induce self-injury, the inmate may be deprived of the item. This action will be noted in the segregation log.

   b.   Inmates will be issued soap, towel, comb, toothbrush, toothpaste, and a face towel. Female inmates may be issued sanitary napkins.

   c.   Inmates will be allowed to shower for a period of five (5) minutes every other day. After the shower period, inmates will be allowed to shave in their cells (razor, clipper, shaving powder). Inmates that are issued razors and blades will not be allowed to keep them in their cell(s).

   d.   Inmates will maintain a haircut in accordance with ALDOC rules.

3.   Issue Items

   The following clothing and bedding will be issued or allowed:

   a.   Socks, 2 pair
   b.   Pants, 2 pair
   c.   Shirt, 2 each
   d.   Under shorts, 2 pair
   e.   Shoes (Slip on tennis shoes)
   f.   Shower slides, 1 pair
   g.   Sheets, 2 each
   h.   Pillow case, 1 each
   i.   Blanket, 1 each (if temperature is 18° or below, 2 blankets)
   j.   Mattress, 1 each
   k.   Jacket, 1 each when weather requires
   l.   Panties, 3 (Female inmates)
   m.   Bras, 3 (Female inmates)
   n.   Gown, 1 (Female inmates)

4.   Mail

   Inmates in administrative segregation will be provided the same opportunities for writing and receipt of letters as is available to the general inmate population. Letters will be delivered promptly.

AR 433 – January 7, 2003

a.    No inmate will be allowed to pick up mail or bring mail to officers assigned to any segregation unit.

b.    The assigned rover will collect mail from inmates housed in segregation units and check the return address, ensuring the return address was from the inmate mail was received from. (Note: Check the card on the cell door if you do not know the inmate.)

c.    All packages or mail will be checked by a supervisor before departing or being required in segregation unit.

5.    Use of Restraint Devices

When the inmate is removed from an Administrative Segregation cell for any reason appropriate restraints will be used, unless otherwise directed by the Warden.

6.    Law Library

a.    Inmates in administrative segregation will have access to legal reference material from the law library.

(1)    Inmates will be allowed access to law books by requesting them through the administrative segregation officer. Length of retention will be established by an institutional SOP.

(2)    Legal paper and envelopes will be issued weekly

(3)    A notary public will be available once each week.

7.    Food

Inmates will be fed three (3) meals daily, except on Sunday's and holidays. Meals will be same as those fed to the inmates in the general population.

8.    Exercise

a.    Inmates in administrative segregation will be afforded the opportunity to come out of their cells for exercise for a period of five (5) hours per seven day period. Inmates in administrative segregation, including close or maximum custody, will be provided the opportunity to exercise in an area designated for this purpose. In accordance with Section IV, C, 5. If weather permits, exercise will be outdoors in an exercise area. A notation will be made on the DOC 912 Form as to whether or not an inmate exercises.

AR 433 – January 7, 2003

b.    Inmates in close or maximum custody may be permitted to exercise in an area designated for that purpose without handcuffs, unless there is a threat to institutional safety or security. Reasons for the imposition of body using any necessary constraints will be documented.

9.    Reading Material

Inmates may have in their possession, one (1) religious book of their preference, one (1) Alcoholics Anonymous book, one (1) Narcotics book, in addition to the four (4) periodicals (magazines/newspapers referred to in Section IV, B, 1, d).

10.    Visitation

a.    Inmates will be permitted one visit per month (except Attorney visits) with persons listed on their approved visitation card, unless the Warden or Warden's designee can justify that such a visitation will jeopardize the safety and/or security of the institution or other visitors.

b.    Security considerations will determine whether visitation will be contact or non-contact.

c.    Inmates may temporarily lose visiting privileges when their privileges are taken away in accordance with Administrative Regulation #403 or #414.

d.    Any inmate who receives a disciplinary while in Administrative Segregation will lose their visiting privileges.

e.    All reasonable efforts will be made by the institutional staff to allow inmates to notify approved visitors of any restrictions on visiting.

11.    Telephone

Inmates in administrative segregation are allowed one (1) telephone call per month unless telephone privileges are lost in accordance with Administrative Regulation #403 or #414.

12.    Radios

Inmates in administrative segregation will be permitted to have one authorized radio with earphones.

13.    Canteen Privileges

AR 433 – January 7, 2003

a.     A Correctional Officer Supervisor II (Captain) or his designee must approve Administrative Segregation canteen draws.

b.     Administrative Segregation inmates are allowed to purchase from the canteen one-half (1/2) the total amount authorized for general population inmates.

c.     Inmates may temporarily lose canteen privileges when these privileges are taken away in accordance with Administrative Regulation #403 or #414.

d.     If canteen privileges have been withdrawn, and when security permits, permission may be granted for purchases not over $5.00 worth of stationery or personal hygiene items.

14.     Storage Boxes

Inmates in administrative segregation will keep all permitted items in their locker box or storage box, except when in use. No items will be displayed in the cell.

15.     Programs

a.     Inmates in administrative segregation will have access to adult basic materials.

b.     When security permits, inmates may be allowed to participate in small psychological therapy groups with the approval of Mental Health professional and the Warden or a designee.

## V    SEGREGATION REVIEW

Each inmate's administrative segregation status will be reviewed according to the segregation review procedures set out in the ALDOC Administrative Regulation #436.

## VI    REFERENCES

A.     American Correctional Association, Standards for Adult Correctional Institutions.

B.     Alabama Department of Corrections Administrative Regulations:

1. AR 303 – Visitation and Correspondence Procedure
2. AR 306 – Disposal of Contraband
3. AR 403 – Disciplinary Hearing Procedures for Major Rule Violations
4. AR 414 – Behavior Citation Procedures for Informal Disciplinary Actions
5. AR 436 – Segregation Review

AR 433 – January 7, 2003

VII    **SUPERSESSION**

This regulation supersedes Administrative Regulation 433 dated January 10, 2000.

_Donal Campbell_
Donal Campbell, Commissioner

**ANNEXES**

Annex A – Administrative Segregation Orientation
Annex B – Administrative Segregation DOC N916 Card

AR 433 – January 7, 2003

# Administrative Segregation Orientation
## Annex A

1. It is your responsibility to abide with and obey all rules established in The <u>Handbook of Rules and Information for Inmates</u>, the <u>Administrative Regulations of the Alabama Department of Corrections</u>, and the laws of the State of Alabama.

2. All cells will be kept clean and orderly. Do not write, mark, deface, or attach objects on the cell walls or any part thereof.

3. Only authorized items are permitted. Other items may be considered contraband and will be subject to disciplinary action. Items that are authorized are:

   a. Current legal papers and only two law books at any given time. When a new law book is needed, an old book must be surrendered.

   b. Stationary items limited to stamps, envelopes, a pad of paper, and a writing instrument. All must be contained neatly in approved container.

   c. Only issued or authorized clothing.

   d. Issued personal hygiene items limited to one small hair comb, one bar of soap, one toothbrush, one small tube of toothpaste, toilet tissue, and one face towel. Female inmates may be issued sanitary napkins.

   e. One book from the institutional library, one religious book of your choice, one Alcoholics Anonymous book, one Narcotics book, and a combination of up to four (4) newspapers/magazines.

   f. One authorized radio with earphones.

4. Other personal property items have been inventoried and stored in the property room until your release.

5. A shower and shave is required every other day. A razor, clipper, or shaving powder will be furnished as appropriate.

6. Meals are served three times daily, except on Sunday and holidays. A cup will remain in the cell. No food items or eating implements will be kept in the cell. Retaining, throwing, or intentionally spilling food is in violation of items 2, 3, and 6 above and subject to disciplinary action.

7. If canteen privileges have not been withdrawn, and when security permits, permission may be granted for you to purchase from the canteen one-half (1/2) of the amount authorized for the general population inmates weekly. Insure items intended for purchase are authorized

Annex A to AR 433 (Page 1 of 2)

AR 433 – January 7, 2003

prior to purchasing. If your canteen privileges have been withdrawn, and when security permits, permission may be granted for purchases not over $5.00 worth of stationary or personal hygiene items. All canteen requests must be approved by a Correctional Officer Supervisor II (Captain) or designee.

8.     You may have one visit per month from your approved visiting list. All visiting must be approved by the Warden or Warden's designee prior to the visitor's arrival at the institution. Inform all potential visitors of your status and visitation restrictions. Security considerations will determine whether visitation will be contact or non-contact.

9.     You are permitted one telephone call per month. All telephone calls must be approved by the Warden or Warden's designee prior to making the call. Inform all potential visitors of your status and visitation restrictions.

10.    All requests for canteen, telephone, or visiting privileges will be considered in relation to your purpose and conditions of being in segregation. Your conduct and demonstrated attitude, and cell inspections will determine if you warrant these privileges.

11.    A minimum of one hour of exercise in appropriate restraints will be extended daily when weather and security permits.

12.    Medical and Dental sick call will be made daily. Pill call will be held three (3) times daily when needed. When routine medical attention is needed, you should: notify an on-duty officer, fill out the sick call requests (including your name, AIS number, cell number, and the nature of your illness) and give the request to the pill call nurse. Emergency medical, dental, and psychological care will be provided as needed.

13.    A unit supervisor will visit the segregation unit.

14.    A staff psychologist will visit the unit two times weekly.

15.    The Institutional Segregation Review Board will meet to consider your status and progress for seven (7) days of continuous segregation.

16.    Inmates placed into Administrative Segregation under investigation should be reviewed and appropriate action will be taken within 72 hours of initial placement, excluding weekends and holidays.

17.    A notary public will tour the segregation unit once per week to provide notary service.

18.    When additional questions or emergencies arise, contact the officer on duty.

AR 433 – January 7, 2003

**Administrative Segregation DOC N916 Card**
**Annex B**

| DOC N 916 | ADMINISTRATIVE SEGREGATION |
|---|---|
| Name | AIS # |
| R/S | Admission Date | Discharge Date |

_____ 1 blanket
_____ 2 sheets
_____ 2 pr. socks
_____ 1 pr. shoes
_____ 2 undershorts
_____ 2 undershirts
_____ 1 pillow
_____ pillow

_____ 1 toothbrush
_____ 1 tube toothpaste
_____ 1 comb
_____ 1
_____ 1
_____ 1
_____ 1 pants
_____ 1 jacket-weather permitting

Issuing Officer _____
                    signature

Processing Officer _____
                    signature

Immediate Segregation  72 hours only  _____

Administrative Segregation Close Custody  _____

Administrative Segregation Maximum Custody  _____

Administrative Segregation Form # 85  _____

Example Only

AR 433 – January 7, 2003