IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| GEORGE PARKER, #140922, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:06-CV-649-WHA |
| | ) | [WO] |
| | ) | |
| GWENDOLYN GIVENS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

# RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.  INTRODUCTION

This 42 U.S.C. § 1983 action is pending before the court on a complaint filed by George Parker ["Parker"], a state inmate, on July 21, 2006 against Gwendolyn Givens, Sharon Roger, Roosevelt Lewis, Relford Kendrick, Grauland A. Davis, all correctional officers at Staton Correctional Facility, and Levan Thomas, the warden of such facility. In this complaint, Parker alleges the defendants violated rights secured by the First Amendment when they lodged a disciplinary against him in retaliation for exercising his rights of free speech and freedom of expression. *Plaintiff's Brief in Support of Complaint - Court Doc. No. 1-7* at 6. Parker further argues the initiation of disciplinary proceedings deprived him of due process and "[e]qual protection of laws[,]" constituted "excessive force" and "inflicted cruel and unusual punishment" because he "was [merely] ...

expressing himself to him**(self) out loudly**....” *Id*. at 6-7.[1]  Finally, Parker alleges the defendants conspired against him to deprive him of his constitutional rights.  *Id*.  Parker seeks a declaratory judgment and monetary damages for the alleged violations of his constitutional rights.  *Id*. at 8.

The defendants filed a special report and supporting evidentiary materials addressing Parker's claims for relief.  Pursuant to the orders entered in this case, the court deems it appropriate to treat this report as a motion for summary judgment.  *Order of September 6, 2006 - Court Doc. No. 13*.  Thus, this case is now pending on the defendants' motion for summary judgment.  Upon consideration of such motion, the evidentiary materials filed in support thereof and Parker's response in opposition to the motion, the court concludes that the defendants' motion for summary judgment is due to be granted.

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(c) (Summary judgment "should be rendered if the pleadings, the discovery and disclosure

---

[1]Parker does not allege or challenge any use of physical force by the defendants; rather, throughout his pleadings, he complains the mere issuance of the disciplinary represented an act of excessive force to deprive him of his constitutional rights secured under the First Amendment.

materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.").[2]  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-324.

The defendants have met their evidentiary burden and demonstrated the absence of any genuine issue of material fact.  Thus, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine issue material to his case exists.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(2) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must ... set out specific facts showing a genuine issue for trial.").  A genuine issue of material fact exists when the nonmoving party produces

---

[2]Effective December 1, 2007, "[t]he language of Rule 56 [was] amended ... to make the rule[] more easily understood and to make style and terminology consistent throughout the rules.  These changes ... are stylistic only." Fed.R.Civ.P. 56 Advisory Committee Notes.  Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior rule remain equally applicable to the current rule.

evidence that would allow a reasonable fact-finder to return a verdict in its favor.

*Greenberg*, 498 F.3d at 1263.

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, our inferences must accord deference to the views of prison authorities.  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (internal citation omitted).  Consequently, to survive the defendants' properly supported motion for summary judgment, Parker is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims of constitutional violations.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e)(1), *Federal Rules of Civil Procedure*.  "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted."  *Id.* at 249-250.  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)."  *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990).  Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment.  *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001);

*Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment...."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (if on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only

factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine issue of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine issue as to a requisite material fact); *Waddell*, 276 F.3d at 1279 (to establish a genuine issue of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine

issue of material fact. *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. In this case, Parker fails to demonstrate a requisite genuine issue of material fact in order to preclude summary judgment. *Matsushita*, *supra*.

## III.  DISCUSSION

### A.  Synopsis of Facts

On December 1, 2005, Parker attended an appointment at the Staton Health Care Unit and waited in the holding cell of this unit until he could be seen by medical personnel. *Plaintiff's Brief in Support of Complaint - Court Doc. No. 1-7* at 6. After several hours, Parker tired of waiting and began making noise while confined in the holding cell. *Id*. At approximately 10:50 a.m., defendant Lewis, the correctional officer assigned to the health care unit, "ordered ... Parker ... to keep down the noise...." *Defendants' Exhibit H (Incident Report SCF-05-1230) - Court Doc. No. 12-9* at 3. Parker concedes he then "stood [and] in a loud voice to inmate **(SELF)** ... expressed his (FEELING) and (Emotional) And stated **(F--- THIS SHIT).  I'm Tired of waiting to be seen[.]  You can** write it up.  I don't give a f---." *Plaintiff's Brief in Support of Complaint - Court Doc. No. 1-7* at 6 (emphasis in original); *Defendants' Exhibit H (Incident Report SCF-05-1230) - Court Doc. No. 12-9* at 3 (same recitation of facts). "Officer Lewis opened the door to the holding cage [and] ... asked ... Parker for [his] I.D. Card.  Inmate Parker complied with Officer Lewis' order.

Inmate Parker continued [his] insubordinate behavior....  At approximately 10:55 a.m., Sgt. Sharon Rogers entered Staton's Health Care Unit.  Officer Lewis reported the incident to Sgt. Rogers.  Sgt. Rogers escorted Inmate Parker to Staton's Shift Office [at which time warden Thomas and Sgt. Rogers counseled Parker].  Warden Thomas verbally reprimanded Inmate Parker concerning [his] negative behavior.  Warden Thomas advised that Inmate Parker be assigned to Staton's Holding Tank, pending disciplinary action for Rule Violation #57 - Insubordination.  [Prior to his placement in the holding tank, a nurse] completed a Body Chart concerning Inmate Parker."  *Defendants' Exhibit H (Incident Report SCF-05-1230) - Court Doc. No. 12-9* at 3.  During examination by the nurse, Parker advised he was "not hurt" and the nurse noted no sign of any injury.  *Exhibit H (Medical Evaluation Report) - Court Doc. No. 12-9* at 4.  Defendant Kendrick then escorted Parker to the holding cell for confinement in administrative segregation pending disciplinary action.

On this same day, defendant Lewis initiated disciplinary action against Parker for violation of Rule #57 - Insubordination.  *Defendants' Exhibit H (Disciplinary Report SCF-05-1230) - Court Doc. No. 12-9* at 8.  Defendant Davis served Parker with notice of the disciplinary charge and the scheduled date for the disciplinary hearing related to this charge.  *Id*.  Upon completion of the noticed disciplinary hearing, at which time Parker entered a plea of guilty and defendant Lewis provided testimony regarding Parker's profane statements, the hearing officer, defendant Givens, found Parker guilty of the

8

aforementioned offense. *Id.* at 10.  The sanctions imposed upon Parker for this disciplinary infraction consisted of loss of canteen and visitation privileges for ninety (90) days.  *Id.*

Parker contends the defendants undertook the disciplinary action against him as excessive force in retaliation for exercising his First Amendment rights to freedom of speech and expression. *Plaintiff's Complaint - Court Doc. No. 1-7* at 2.  In support of his First Amendment claim, Parker argues the disciplinary should not have been issued because although he used profane language in the presence of defendant Lewis he was only talking to himself. *Plaintiff's Brief in Support of Complaint - Court Doc. No. 1-7* at 6. Parker further complains the disciplinary deprived him of due process and equal protection and resulted in improper punishment violative of the Eighth Amendment. *Plaintiff's Complaint - Court Doc. No. 1-7* at 2-3.  Parker also alleges the actions of the defendants resulted from a conspiracy against him. *Plaintiff's Brief in Support of Complaint - Court Doc. No. 1-7* at 6-7.

### B.  Absolute Immunity

With respect to any claims lodged against the defendants in their official capacities, they are immune from monetary damages.  Official capacity lawsuits are "in all respects other than name, ... treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985).  "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has

abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996).  Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity.  Therefore, Alabama state officials are immune from claims brought against them in their official capacities."  *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, it is clear that the defendants are state officials entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities.  *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia Department of Transportation*, 16 F.3d 1573, 1575 (11th Cir. 1994).  Thus, the defendants are entitled to absolute immunity from any claims for monetary relief presented against them in their official capacities.  *Parker v. Williams*, 862 F.2d 1471 (11th Cir. 1989).

## C.  The First Amendment

Parker complains the defendants acted in an excessive manner when they initiated and processed a disciplinary against him for insubordination in retaliation for expressing his feelings in violation of his First Amendment rights to freedom of speech and expression.  The defendants, however, maintain they disciplined Parker solely because his behavior constituted insubordination in violation of institutional rules and regulations, i.e, Parker responded in a loud manner and used profane language when a correctional officer ordered him to diminish the noise.  The affidavits and evidentiary materials submitted by

10

the defendants support this assertion. *Defendants' Exhibit I - Court Doc. No. 12-10* at 16 (The applicable regulation defines insubordination as "[a]ny act, gesture, remark or statement which obviously reflects disrespect to lawful authority."). Parker's admission that he used profanity in expressing his displeasure with the delay and then stated to defendant Lewis "**You can** write it up. I don't give a f---[,]" *Plaintiff's Brief in Support of Complaint - Court Doc. No. 1-7* at 6, also support issuance and prosecution of the disciplinary.

Federal law recognizes "that 'courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform.' [*Procunier v. Martinez*, 416 U.S. 396, 405, 94 S.Ct. 1800, 1807 (1974)]. As the *Martinez* Court acknowledged, 'the problems of prisons in America are complex and intractable, and, more to the point, they are not readily susceptible of resolution by decree.' *Id.*, at 404-405, 94 S.Ct., at 1807. Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources...." *Turner v. Safley*, 482 U.S. 78, 84-85, 107 S.Ct. 2254, 2259 (1987). Correctional officials are therefore "accorded latitude in the administration of prison affairs[,]" *Cruz v. Beto*, 405 U.S. 319, 321, 92 S.Ct. 1079, 1081 (1972), which necessarily includes "the [inescapable] withdrawal or limitation of many [inmate] privileges and rights." *Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 2804 (1974) (quotation marks and citation omitted); *Bell v. Wolfish*, 441 U.S. 520, 546, 99 S.Ct. 1861, 1877 (1979).

11

"In the First Amendment context, ... some rights are simply inconsistent with the status of a prisoner or 'with the legitimate penological objectives of the corrections system.'" *Shaw v. Murphy*, 532 U.S. 223, 229, 121 S.Ct. 1475, 1479 (2001), quoting *Pell*, 417 U.S. at 822, 94 S.Ct. at 2804. In accordance with this principle, an inmate's rights established under the First Amendment are not protected if allowing such protection is "inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell*, 417 U.S. at 822, 924 S.Ct. at 2804. Thus, while inmates retain a constitutional right protected by the First Amendment to freely exercise their grievances, this right is limited by the fact of incarceration and valid penological objectives such as maintaining institutional security and order. The law is well settled that "central to all other corrections goals is the institutional consideration of internal security within the corrections facilities themselves." *Pell*, 417 U.S. at 823, 94 S.Ct. at 2804; *Bell v. Wolfish,* 441 U.S. at 546, 99 S.Ct. at 1878 ("[M]aintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees."). It is therefore clear that preservation of security and order within a correctional facility is essential to the facility's effective administration and constitutes both a compelling and substantial governmental interest. *Pell*, 417 U.S. at 823, 94 S.Ct. at 2804; *Lawson v. Singletary*, 85 F.3d 502, 512 (11th Cir. 1996); *Harris v. Chapman*, 97 F.3d 499, 504 (11th Cir. 1996).

"The first amendment prohibits state officials from retaliating against prisoners for exercising their right of free speech. *See, e.g., Wright v. Newsome*, [795 F.2d 964, 968 (11th Cir. 1986)].... The gist of a retaliation claim is that a prisoner is penalized for exercising a right of free speech." *Thomas v. Evans*, 880 F.2d 1235, 1241-1242 (11th Cir. 1989); *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003). "In prison, of course, first amendment rights are not absolute. *Pell v. Procunier*, 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974). Legitimate policies and goals of the correction system may justify restrictions limiting prisoners' [first amendment] rights. 417 U.S. at 821." *Adams v. James*, 784 F.2d 1077, 1081 (11th Cir. 1986). "A prisoner retains those First Amendment rights that are 'not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrective system.' *Prison Legal News v. Cook*, 238 F.3d 1145, 1149 (9th Cir. 2001) (quoting *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 129, 97 S.Ct. 2532, 53 L.Ed.2d 629 (resist)) (internal quotation marks omitted).... [P]rison authorities have a legitimate penological interest in the consistent enforcement of prison rules and ... disciplining prisoners who attempt to coerce a guard into not enforcing prison rules is reasonably related to that interest." *Hargis v. Foster*, 312 F.3d 404, 409-410 (9th Cir. 2002); *see also Jackson v. Cain*, 864 F.2d 1235, 1248 (5th Cir. 1989). The situation is somewhat complicated when the alleged act of retaliation is undertaken to assure compliance with prison rules as inmates often attempt to "inappropriately insulate themselves from [such] actions by drawing the shield of

13

retaliation around them." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995), *cert. denied sub nom Palermo v. Woods*, 516 U.S. 1084, 116 S.Ct. 800, 133 L.Ed.2d 747 (1996).

To proceed on a claim for retaliation under the First Amendment and withstand the entry of summary judgment, an "inmate must establish ... three elements: (1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the [defendants'] allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech. *See Bennett v. Hendrix*, 423 F.3d 1247, 1250, 1254 (11th Cir. 2005)." *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008); *Thaddeus-X v. Blatter*, 175 F.3d 378, 397 (6th Cir. 1999).   With respect to the causal relationship element, a prisoner must demonstrate that correctional officials intended to retaliate for his exercise of a right protected under the First Amendment and, but for the retaliatory motive, the adverse act complained of would not have occurred.  *Woods*, 60 F.3d at 1166; *Smith*, 532 F.3d at 1278.

Parker alleges the defendant retaliated against him for expressing his frustration with the delay in receiving a medical evaluation, thus satisfying the first element of his retaliation claim.  *Smith*, 532 F.3d at 1277.  The second element requires Parker to demonstrate that the disciplinary "would likely deter a [prisoner] of ordinary firmness" from expressing his political beliefs.   *Id*.  This "presents an objective standard and a factual inquiry."  *Id*.  The court assumes *arguendo* that this standard has been met.

14

Nevertheless, Parker fails to satisfy the third requisite element of a retaliation claim - a causal connection between his constitutionally protected activity and the adverse actions of the defendants.

The causal connection inquiry focuses on the "subjective motivation of the defendants[,]" *Thaddeus-X*, 175 F.3d at 399, and this court must therefore determine "whether the defendants were subjectively motivated to discipline" Parker for expressing his discontent with the delay in receiving a medical evaluation. *Smith*, 532 F.3d at 1278. The subjective motivation issue is resolved by most courts under the burden-shifting formula set forth in *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576 (1977). This formula requires that the plaintiff first meet "his burden of establishing that his protected conduct was a motivating factor behind any harm" and then "the burden of production shifts to the defendant. If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment." *Thaddeus-X*, 175 F.3d at 399, referencing the *Mt. Healthy* motive analysis.

It is essential that federal courts "carefully scrutinize retaliation claims" brought by prisoners challenging adverse actions of correctional personnel. *Woods*, 60 F.3d at 1166. "[C]ourts must approach prisoner claims of retaliation with skepticism and particular care. *See Flaherty v. Coughlin,* 713 F.2d 10, 13 (2nd Cir. 1983). This is [necessary because prisoners'] ... claims of retaliation are ... easily fabricated [and] pose a substantial risk of

15

unwarranted judicial intrusion into matters of general prison administration.  This is so because virtually any adverse action taken against a prisoner by a prison official--even those otherwise not rising to the level of a constitutional violation--can be characterized [by the prisoner] as a constitutionally proscribed retaliatory act."  *Dawes v. Walker*, 239 F.3d 489, 491 (2nd Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).

An inmate has the initial burden of establishing a prima facie case of unlawful retaliation by showing "that his conduct was constitutionally protected and that this conduct ... was a 'motivating factor'" behind the adverse actions of the defendant.  *Mt. Healthy*, 429 U.S. at 287, 97 S.Ct. At 576.  Merely alleging the ultimate fact of retaliation, however, is insufficient.  *Cain v. Lane*, 857 F.2d 1139, 1142, n.6 (7th Cir. 1988); *Woods*, 60 F.3d at 1166.  Additionally, conclusory allegations are insufficient to demonstrate the existence of each element requisite to establishing retaliation.  *Morales*, 278 F.3d at 131; *Bennett v. Goord*, 343 F.3d 133, 137 (2nd Cir. 2003) (Because prisoner retaliation claims are prone to abuse, "we are careful to require non-conclusory allegations.").  If an inmate meets his burden with appropriate evidence, the burden of production shifts to the defendants to show that they "would have reached the same decision as to [plaintiff's discipline] even in the absence of the protected conduct."  *Mt. Healthy*, 429 U.S. at 287, 97 S.Ct. at 576.  "Under the *Mt. Healthy* approach, if the government official 'can prove that [he] would have taken the adverse action in the absence of the plaintiff's protected

16

conduct, [he] cannot be held liable.' *Thaddeus-X*, 175 F.3d at 388 n.4...." *Smith*, 532 F.3d at 1278 n.22.

Parker makes the conclusory and speculative assertion that the defendants initiated and convicted him of a disciplinary merely because he expressed his feelings regarding the amount of time he had been required to wait in the health care unit.  Parker has submitted no direct evidence that his stated grievance was the motivating factor in the defendants' actions and nothing in any of Parker's responses suggests the disciplinary and related actions were a mere pretext to punish Parker for voicing a grievance.  In fact, Parker pled guilty to the charge of insubordination.  The defendants also adamantly deny this allegation and argue the adverse action about which Parker complains occurred in an effort to maintain security and due to the manner in which Parker addressed defendant Lewis, not because of the grievance expressed in his statement.

Parker offers only his conclusory allegation of ultimate fact that the defendants retaliated against him for expressing his frustration with medical personnel.  This allegation is insufficient to defeat summary judgment.  *Waddell*, 276 F.3d at 1279; *Holifield*, 115 F.3d at 1564, n.6.  The record before the court is devoid of admissible or potentially admissible evidence, direct or otherwise, from which a reasonable fact finder could infer the requisite motivating factor.  Additionally, the circumstances, when taken as a whole, do not support making such an inference.  Thus, Parker's retaliation claim falters on this element.  Moreover, even assuming a reasonable fact finder could infer the

motivating factor element, it is clear the defendants would have initiated and prosecuted Parker for insubordination even if his statement had not contained what could be construed as a legitimate grievance. "Objective prison administrators standing in [the defendants'] shoes would assume that the gist of what [Parker] said ... and the language he employed, which reeked of disrespect for the [officer's] authority, would be noised about the prison's population and, if ignored, could seriously impede their ability to maintain order and thus achieve the institution's penological objectives." *Smith*, 532 F.3d at 1279. Consequently, the defendants are entitled to summary judgment on the First Amendment claim as Parker fails to establish by appropriate evidence a causal relationship between the alleged protected activity and any adverse action taken against him. *Id*. at 1278-1279.

### D.  Due Process

Parker complains the defendants denied him due process regarding the disciplinary proceedings related to the insubordination charge because (i) defendant Thomas ordered that he be placed in administrative segregation from the time of the offense until his hearing; (ii) he was denied the opportunity to conduct legal research in the law library regarding the charge; and (iii) the charge is not supported by underlying facts. Under the circumstances of this case, Parker's due process challenge entitles him to no relief.

The Supreme Court has identified two circumstances in which a prisoner, an individual already deprived of his liberty in the ordinary sense, can be further deprived of his liberty such that due process is required. "The first is when a change in a prisoner's

18

conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court. *See Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995); *see, e.g., Vitek v. Jones,* 445 U.S. 480, 492-93, 100 S.Ct. 1254, 1263-64, 63 L.Ed.2d 552 (1980) (holding that a prisoner is entitled to due process prior to being transferred to a mental hospital). The second is when the state has consistently given a certain benefit to prisoners (for instance, via statute or administrative policy), and the deprivation of that benefit 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' *Sandin,* 515 U.S. at 484, 115 S.Ct. at 2300; *see, e.g., Wolff v. McDonnell,* 418 U.S. 539, 558, 94 S.Ct. 2963, 2976, 41 L.Ed.2d 935 (1974) (prisoners may not be deprived of statutory 'good-time credits' without due process); *cf. Dudley v. Stewart,* 724 F.2d 1493, 1497-98 (11th Cir.1984) (explaining how the state creates liberty interests). In the first situation, the liberty interest exists apart from the state; in the second situation, the liberty interest is created by the state." *Bass v. Perrin*, 170 F.3d 1312, 1318 (11th Cir. 1999).

The Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement. *Sandin*, 515 U.S. at 485-486, 115 S.Ct. at 2305 (disciplinary confinement of inmate in segregation does not implicate a constitutionally protected liberty interest); *Meachum v. Fano,* 427 U.S. 215, 225 (1976) (no liberty interest arising from Due Process Clause itself in transfer from low-to maximum-security prison because "[c]onfinement in any of the State's institutions is within the normal limits or

range of custody which the conviction has authorized the State to impose"); *Olim v. Wakinekona*, 461 U.S. 238, 245-246 (1983) (a prisoner has no constitutional right to be confined in a particular institution).  Moreover, an inmate in the Alabama prison system has no constitutionally protected interest in the privileges bestowed upon him or confinement in the least restrictive prison environment because the resulting restraints are not so severe that they exceed the sentence imposed upon him.  *Sandin*, 515 U.S. at 485, 115 S.Ct. at 2301 ("Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law.").  Thus, the deprivations imposed upon Parker based on the challenged disciplinary did not "exceed the sentence [imposed by the trial court] in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force."  *Sandin,* 515 U.S. at 484, 115 S.Ct. at 2300.  This court must therefore determine whether the actions about which Parker complains involve the deprivation of a state-created liberty interest as defined by the standard set forth in *Sandin*.

As the Supreme Court recently opined,

*Sandin* involved prisoners' claims to procedural due process protection before placement in segregated confinement for 30 days, imposed as discipline for disruptive behavior.  *Sandin* observed that some of our earlier cases, *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), in particular, had employed a methodology for identifying state-created liberty interests that emphasized "the language of a particular [prison] regulation" instead of "the nature of the deprivation."  *Sandin,* 515 U.S., at 481, 115 S.Ct. 2293.  In *Sandin,* we criticized this methodology as creating a disincentive for States to promulgate procedures for prison management, and as involving the federal courts in the day-to-day

management of prisons. *Id.,* at 482-483, 115 S.Ct. 2293. For these reasons, we abrogated the methodology of parsing the language of particular regulations.

"[T]he search for a negative implication from mandatory language in prisoner regulations has strayed from the real concerns undergirding the liberty protected by the Due Process Clause. The time has come to return to the due process principles we believe were correctly established in and applied in *Wolff* and *Meachum.* Following *Wolff,* we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.,* at 483-484, 115 S.Ct. 2293 (citations and footnote omitted).

After *Sandin,* it is clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves "in relation to the ordinary incidents of prison life." *Id.,* at 484, 115 S.Ct. 2293.

*Wilkinson v. Austin*, 545 U.S. 209, 222-223, 125 S.Ct. 2384, 2393-2394 (2005).

Applying the *Sandin* inquiry, the court concludes that limited time in administrative segregation and the temporary loss of canteen/visitation privileges "though concededly punitive, do[] not represent a dramatic departure from the basic conditions" of the sentence imposed upon the plaintiff. *Id.* at 485. In light of the foregoing, it is clear that the aforementioned sanctions fail to "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484. Consequently, the plaintiff's theory of liability under the law as established in *Sandin* is indisputably meritless and, therefore, frivolous within the meaning of 28 U.S.C. § 1915(e)(2)(B)(i). *Neitzke v.*

*Williams*, 490 U.S. 319, 327 (1989).

### E.  Equal Protection

Parker alleges the defendants acted in violation of his right to equal protection by disciplining him for insubordination.  This claim entitles Parker to no relief.

In order to establish a claim cognizable under the Equal Protection Clause, "a prisoner must [at a minimum] demonstrate that (1) he is similarly situated to other prisoners who received more favorable treatment; and (2) the state engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis.  *Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001); *Damiano v. Florida Parole and Prob. Comm'n*, 785 F.2d 929, 932-33 (11th Cir. 1986)." *Sweet v. Secretary, Department of Corrections*, 467 F.3d 1311, 1318-1319 (11th Cir. 2006). "[O]fficial action will not be held unconstitutional solely because it results in a ... disproportionate impact....  Proof of ... discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 264-265 (1977).  "'Discriminatory purpose' ... implies more than intent as volition or intent as awareness of consequences.  It implies that the decision maker ... selected ... a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979) (footnote and citation omitted); *see also Hernandez v. New York*, 500 U.S. 352, 359 (1991).  Evidence which

22

merely indicates disparity of treatment or even arbitrary administration of state powers, rather than instances of purposeful or invidious discrimination, is insufficient to show discriminatory intent. *McKleskey v. Kemp,* 481 U.S. 279, 292, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987).

Parker fails to identify any similarly situated inmate who received differential treatment from the defendants. Thus, Parker's "equal protection claim necessarily fails first because he has not shown that he was treated differently from other, similarly situated prisoners." *Sweet,* 467 F.3d at 1319. This assertion likewise provides no basis for relief

> because [Parker] has not alleged ... that he was treated differently on account of some form of ***invidious discrimination*** tied to a constitutionally protected interest. He has not even claimed that he was treated differently from others because of race, religion, or national origin [and actually concedes such is not the case]. *See Snowden v. Hughes,* 321 U.S. 1, 8, 64 S.Ct. 397, 88 L.Ed. 497 (1944) ("The unlawful administration ... of a state statute fair on its face, resulting in its unequal application to those who are entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination."); *McQueary v. Blodgett,* 924 F.2d 829, 835 (9th Cir.1991) (rejecting a claim that a state prisoner's equal protection rights were violated because he received a longer sentence than some other prisoners and holding that "a mere demonstration of inequality is not enough; the Constitution does not require ***identical*** treatment. There must be an allegation of invidiousness or illegitimacy in the statutory scheme before a cognizable claim arises: it is a settled rule that the Fourteenth Amendment guarantees equal laws, not equal results." (internal quotation marks omitted)); *see also Cruz v. Skelton,* 543 F.2d 86, 92-93 (5th Cir.1976) (affirming dismissal of prisoner's equal protection claim because there was no allegation of "'invidious discrimination' based on such considerations as race, religion, national origin, or poverty").

*Sweet,* 467 F.3d at 1319 (emphasis in original). Parker has therefore not been denied equal

protection of the law with respect to the disciplinary lodged against him and the defendants are entitled to summary judgment on the equal protection claim.

### F. Cruel and Unusual Punishment

Parker maintains the actions taken against him based on his insubordination disciplinary constituted cruel and unusual punishment in violation of the Eighth Amendment.  This claim is without merit.

The Eighth Amendment proscribes those conditions of confinement which involve the wanton and unnecessary infliction of pain.  *Rhodes v. Chapman*, 452 U.S. 337 (1981). Only actions which deny inmates "the minimal civilized measure of life's necessities" are grave enough to violate the Eighth Amendment.  *Id.* at 347; *see also Wilson v. Seiter*, 501 U.S. 294 (1991).  None of the deprivations resulting from the insubordination disciplinary establish a sufficiently grave deprivation denying minimal civilized measures of life's necessities so as to rise to the level of cruel and unusual punishment.  Summary judgment is therefore due to be granted in favor of the defendants with respect to the alleged imposition of unconstitutional punishment.

### G. Conspiracy

In his complaint, Parker makes the specious assertion that all of the adverse actions about which he complains resulted from a conspiracy among the defendants.  Parker argues the alleged conspiracy violated both his civil rights under 42 U.S.C. § 1983 and federal criminal law codified at 18 U.S.C. § 241 and § 242.  The evidentiary materials filed by the

defendants refute these assertions.

1. <u>The Civil Conspiracy Claim</u>.  A conspiracy claim justifiably may be dismissed because of the conclusory, vague and general nature of the allegations of a conspiracy. *Fullman v. Graddick*, 739 F.2d 553, 556-557 (11th Cir. 1984).  The court has carefully reviewed the plaintiff's allegations of a conspiracy.  At best, the assertions made by Parker are self serving, purely conclusory allegations that fail to assert those material facts necessary to establish a conspiracy between the named defendants. *Strength v. Hubert*, 854 F.2d 421, 425 (11th Cir. 1988) (to properly state a claim for relief based on a conspiracy, a plaintiff must, at the least, plead facts demonstrating that the offending parties "reached an understanding" to deny the plaintiff his constitutional rights); *Harvey v. Harvey*, 949 F.2d 1127, 1133 (11th Cir. 1992) (merely "stringing together" acts, without showing that the parties "reached an understanding" to violate plaintiff's rights, is insufficient to allege the existence of a conspiracy).

Other than his suppositious allegations, Parker presents nothing, nor can this court countenance any evidence, to indicate that the defendants entered into a conspiracy to deprive him of his constitutional rights.  In light of the foregoing, the court concludes that the plaintiff's bare allegations of a conspiracy are insufficient to support a claim for relief under 42 U.S.C. § 1983 and are therefore due to be dismissed pursuant to the directives of 28 U.S.C. § 1915(e)(2)(B)(ii).  *Harvey*, 949 F.2d at 1133; *Fullman*, 739 F.2d at 556-557.

2. <u>The Criminal Conspiracy Claim</u>.  Parker seeks relief for alleged criminal actions

which he contends violated his constitutional rights as prohibited by 18 U.S.C. § 241 and

§ 242. This request for relief, however, is subject to summary dismissal. "Title 18 U.S.C.

§ 241 is a statute that criminalizes conspiracies against a person's rights under the

Constitution or laws of the United States. There is no private right of action under this

criminal statute. *Risley v. Hawk*, 918 F.Supp. 18, 21 (D.D.C. 1996), *aff'd*, 108 F.3d 1396

(D.C. Cir. 1997); *Dugar v. Coughlin*, 613 F.Supp. 849, 852 n.1 (S.D. N.Y. 1985).... Title

18 U.S.C. § 242 makes it a crime to willfully deprive persons under color of law of their

rights under the Constitution or laws of the United States. The statute does not create a

private cause of action. *Powers v. Karen*, 768 F.Supp. 46, 51 (E.D.N.Y. 1991), *aff'd*, 963

F.2d 1552 (2nd Cir. 1992); *Dugar v. Coughlin*, 613 F.Supp. 849, 852 n.1 (S.D.N.Y. 1985)."

*Gipson v. Callahan*, 18 F.Supp.2d 662, 668 (W.D.Tex 1997). Thus, Parker is precluded

from obtaining relief under these code sections "because, as criminal statutes, they do not

convey a private right of action" nor do they authorize an individual to initiate criminal

proceedings. *Rockefeller v. United States Court of Appeals Office for Tenth Circuit

Judges*, 248 F.Supp.2d 17, 23 (D.D.C 2003). Parker's claim arising under 18 U.S.C. § 241

and § 242 is therefore due to be summarily dismissed as frivolous in accordance with the

provisions of 28 U.S.C. § 1915(e)(2)(B)(i).

## IV. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The defendants' motion for summary judgment be GRANTED.

2.  Judgment be GRANTED in favor of the defendants.

3.  This case be dismissed with prejudice.

4.  The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that on or before April 20, 2009 the parties may file objections to this Recommendation.  Any objections filed must clearly identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 7th day of April, 2009.

27

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED   STATES   MAGISTRATE   JUDGE